**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **ANNIE ARNOLD, etc.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) CIVIL ACTION 17-0148-WS-C |
| | ) |
| **STATE FARM FIRE AND** | )      **PUBLISH** |
| **CASUALTY COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on the defendant's motion to dismiss. (Doc. 10). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 10, 11, 14, 15, 27, 30),[1] and the motion is ripe for resolution.[2]

## BACKGROUND

This action was filed in state court and timely removed by the defendant.[3] According to the class action complaint, (Doc. 1-2 at 1-14), the plaintiff's house was insured by the defendant under a policy ("the Policy") providing replacement cost value ("RCV") coverage. Payment on covered losses under such policies

---

[1] Because the defendant filed a corrected brief an hour after filing its motion, (Doc. 11), the Court does not consider its original brief. (Doc. 10-1).

[2] The plaintiff has filed a motion to remand, (Doc. 19), which is fully briefed and ripe for resolution. (Docs. 19, 28, 29). Ordinarily, the Court would consider a motion to remand prior to considering a motion to dismiss. However, because the only ground of the motion to remand presupposes the success of the defendant's motion to dismiss, the Court addresses that motion first.

[3] The action was removed pursuant to 28 U.S.C. § 1453. The Court has confirmed that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

proceeds in two stages. Initially, the defendant pays actual cash value ("ACV"), which it calculates as the estimated cost of materials and labor required to complete the removal of damaged materials and subsequent repairs, less depreciation. The defendant pays the difference between ACV and RCV only if the insured accomplishes the repairs, rebuilding or replacement of the damaged property within a specific time frame and submits proof of same to the defendant. The insured therefore must front repair/replacement costs exceeding the ACV payment. In the plaintiff's case, and as a rule, in calculating ACV the defendant depreciates both materials and labor. The single claim presented is that the defendant breached its contractual duty to pay ACV by unlawfully depreciating labor costs.

## DISCUSSION

The defendant argues that the plaintiff lacks standing to pursue her claim and that the Court thus lacks subject matter jurisdiction. The defendant further argues that the complaint fails to state a claim upon which relief can be granted.

## I. Standing.

"In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated in part on other grounds*, *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014). Standing has both constitutional and prudential components, *id.*, but the defendant challenges only constitutional standing. (Doc. 11 at 12). Constitutional standing is jurisdictional, and in its absence "the federal court must dismiss the case for lack of subject matter jurisdiction." *Florida Wildlife Federation, Inc. v. South Florida Water Management District*, 647 F.3d 1296, 1302 (11th Cir. 2011); *accord Stalley ex rel. United States v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

A challenge to standing under Rule 12(b)(1) can be either facial or factual. The defendant mounts a factual challenge. In such a case, "matters outside the pleadings, such as testimony and affidavits are considered." *McElmurray v. Consolidated Government*, 501 F.3d 1244, 1251 (11th Cir. 2007) (internal quotes omitted). "Since such a motion implicates the fundamental question of a trial court's jurisdiction, a trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case without presuming the truthfulness of the plaintiff's allegations." *Makro Capital of America, Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008) (internal quotes omitted).

The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized … and (b) actual or imminent, not conjectural or hypothetical …." *Id*. (internal quotes omitted). "Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. (internal quotes omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (internal quotes omitted).

The defendant has presented uncontroverted evidence that, before this lawsuit was filed, it had paid the plaintiff RCV based on her undepreciated labor costs. (Doc. 11-1). The defendant concludes that, because no disputed labor depreciation remained unpaid at the commencement of the action, the plaintiff is unable to satisfy the second requirement of constitutional standing. (Doc. 11 at 14, 15 n.8). This seems doubtful, since the defendant does not dispute that it, rather than some third party acting independently, performed the challenged action of reducing ACV by depreciating labor costs. The cases cited by the defendant, however, do suggest (with minimal analysis) that a defendant's payment in full of

3

a plaintiff's claim may negate an injury in fact, make it impossible to redress the (already redressed) injury by a favorable decision, or moot the controversy.[4]

The plaintiff responds that she has not in fact been made whole. She notes that the defendant did not pay RCV until several years after paying ACV, and her complaint demands an award of prejudgment interest to compensate her for the withholding of labor depreciation during this interval. (Doc. 1-2 at 13; Doc. 15 at 23).

Anticipating this response, the defendant argues that entitlement to prejudgment interest for breach of contract is governed by Alabama Code § 8-8-8 and that the plaintiff, for various fact-intensive reasons, cannot satisfy that provision's elements, *viz.*, that the amount due was certain, that the time it was due was certain, and that the defendant knew both. (Doc. 11 at 15-16). The defendant assumes rather than demonstrates that its argument goes to standing, but the Court cannot indulge the defendant's assumption.

The defendant does not identify which element or elements of standing it believes to be imperiled by its argument, but it makes no difference. As for the first element, the only possible question is whether the plaintiff suffered the "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. "A legally cognizable injury requires infringement of an interest protected by statute or otherwise." *Primera Iglesia Bautista Hispana, Inc. v. Broward County*, 450 F.3d 1295, 1304 (11th Cir. 2006) (internal quotes omitted). The complaint alleges the breach of a contract to pay undepreciated labor costs, and contractual rights are certainly protected by law. *E.g., Avenue CLO Fund Ltd. v. Bank of America*, 709 F.3d 1072, 1077 (11th Cir. 2013). Although the defendant has recently paid those undepreciated labor costs, it has not paid interest on the withheld amounts. Even if general contract law does not provide a legally protected interest in receiving

---

[4] Mootness is not part of standing analysis. Instead, "[j]usticiability doctrine is composed of three strands: standing, ripeness, and mootness." *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (internal quotes omitted).

interest on wrongly withheld sums, Section 8-8-8 establishes such an interest by providing that "[a]ll contracts … for the payment of money … bear interest from the day such money … should have been paid …."

As for the second element of standing, there is no question but that it was the defendant, and not some missing third party, that has failed to pay the plaintiff interest on the amounts withheld as depreciation on labor.

As for the third element, redressability means a "substantial likelihood that the requested relief will remedy the injury in fact." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal quotes omitted); *accord Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (the plaintiff's injury must be "likely to be redressed by the requested relief") (internal quotes omitted); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998) (redressability is "a likelihood that the requested relief will redress the alleged injury"). "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co.*, 523 U.S. at 107. The plaintiff's injury must be "likely to be redressed if the requested relief is granted." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979). Plainly, an award of prejudgment interest will remedy the injury suffered by the defendant's failure to pay such interest, precisely redressing the injury.

The defendant challenges standing by arguing that, under the evidence it presents, the plaintiff cannot satisfy the three-part test identified by the Alabama Supreme Court for recovery under Section 8-8-8. Primarily, the defendant argues that, under the Policy, payment was not due until 60 days after the plaintiff presented proof of loss; that the plaintiff never did so; and that the defendant's payment of ACV did not waive the proof-of-loss trigger (as would usually occur) because the Policy contains a no-waiver provision and because it did not realize its payment would work a waiver. Because the date the payment was due never arrived, the defendant concludes the plaintiff cannot be entitled to receive an

award of prejudgment interest. The defendant also presents factual arguments denying that the amount due was certain or that it knew either the amount due or the date it was due. (Doc. 11 at 15-16; Doc. 27 at 9-12).

The Court need not pass on the factual or legal validity of these arguments, because they do not address standing but rather the merits of the plaintiff's case. "Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Interface Kanner, LLC v. JPMorgan Chase Bank*, 704 F.3d 927, 932 (11th Cir. 2013) (internal quotes omitted). It thus does not matter for standing purposes whether the plaintiff can actually prove the defendant is legally obligated to pay prejudgment interest. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal …."); *Mulhall v. UNITE HERE, Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) (same).

The defendant, which relies exclusively on *Lujan* for its understanding of standing's elements, appears to have misconstrued the Supreme Court's statement that redressability requires that the injury "will be redressed by a favorable decision." 504 U.S. at 561. The defendant appears to take this language to mean that, assuming a favorable decision on liability, it must be likely the plaintiff can establish entitlement to the requested relief. A "favorable decision," however, is a favorable decision "on the merits," which includes an award of the requested relief. *E.g., Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1004 (11th Cir. 2004). As the cases cited above and in the accompanying note reflect, the test for standing is whether, assuming the plaintiff receives the relief she requests, that relief will redress the injury she suffered.[5] Undoubtedly an award of prejudgment interest will redress a failure to pay prejudgment interest.

---

[5] *See, e.g., Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 44 (1976) (standing absent where alleged harm was hospitals' denial of service to indigents, and it was merely speculative whether the requested relief – a requirement that the hospitals serve indigents as a condition of receiving favorable tax treatment – would result in the hospitals serving indigents rather than foregoing the favorable tax treatment);

In its reply brief, the defendant raises a new standing argument: that, under Alabama law, the pre-suit payment and acceptance of principal "extinguish[es]" any interest claim. (Doc. 27 at 9). District courts, including this one, ordinarily do not consider arguments raised for the first time on reply.[6] However, because – and only because – the defendant raises the argument as a challenge to subject matter jurisdiction, the Court addresses it. *E.g., Bank of Brewton v. Travelers Companies, Inc.*, 2014 WL 2113092 at *4 (S.D. Ala. 2014) ("[W]hen the issue goes to subject matter jurisdiction, the Court will consider an argument first raised in reply.").

As with the defendant's previous arguments, this one goes not to standing but to the merits of the plaintiff's claim, *viz.*, her ability to establish the elements for recovery of prejudgment interest. But even were the defendant's argument truly one implicating standing, it would fail. The defendant relies for its argument on a 1914 decision of an intermediate Alabama court which ruled that, when interest is a function of statute and not of express contractual provision, interest is not the basis of a separate right of action but only an incident to recovery of the principal, such that payment and acceptance of the principal extinguishes any right to interest. *Louisville & Nashville Railroad Co. v. Elmore & Brame*, 65 So. 695, 695-96 (Ala. App. 1914). The Alabama Supreme Court, however, has repudiated the proposition on which the defendant relies:

---

*Florida Family Policy Council v. Freeman*, 561 F.3d 1246, 1258 (11th Cir. 2009) (standing absent where the requested relief – barring enforcement of certain canons of judicial conduct – would not redress the injury of judicial disqualification because an unchallenged statute would still result in disqualification); *KH Outdoor, L.L.C. v. Clay County*, 482 F.3d 1299, 1303, 1305 (11th Cir. 2007) (standing absent where the requested relief – striking down a sign ordinance – would not redress the injury of inability to erect proposed signs, because the plaintiff's permit applications failed to meet other, unchallenged statutes and regulations).

[6] *See Park City Water Authority v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005).

> We have carefully considered these cases [including *Elmore & Brame*] and disagree with the reasoning that allows the collection of interest after the acceptance of principal when the right to interest is expressed in the contract, but not when the right to interest is mandated by statute. We have searched in vain and find no basis for the distinction, especially in the light of our cases which would read the statute [Section 8-8-8] into the contract, making it part of the agreement.

*Thomas v. Liberty National Life Insurance Co.*, 368 So. 2d 254, 258 (Ala. 1979). Alabama, in short, permits a stand-alone action for contractual interest under Section 8-8-8.[7]

The plaintiff's motion to remand argues that, if she lacks constitutional standing and the Court thus lacks subject matter jurisdiction, the proper remedy is remand rather than dismissal. (Doc. 19 at 2). Because the plaintiff does have standing, her motion to remand is due to be denied.

## II. Failure to State a Claim.

As noted, the dispute in this case centers on whether the defendant properly depreciated labor in its calculation of ACV. The defendant asserts that this question must as a matter of law be answered in the affirmative.

The Policy provides that, "until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property," capped by the lower of policy limits or cost to repair or replace. (Doc. 1-2 at 28).[8] The Policy does not define "actual cash value."

"The court must enforce the insurance policy as written if the terms are unambiguous …." *Safeway Insurance Co. v. Herrera*, 912 So. 2d 1140, 1143

---

[7] The defendant also cites a sister federal court's conclusion – reached without analysis or citation to any authority – that Georgia does not allow a stand-alone interest claim. (Doc. 27 at 9). Even if that proposition is correct, this case is governed by Alabama law, not Georgia law.

[8] The policy is an exhibit to the complaint and thus can be considered on a Rule 12(b)(6) motion. *E.g., Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

(Ala. 2005). "Whether a provision of an insurance policy is ambiguous is a question of law." *Id.* "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it." *Id.* That is, "[w]hen analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them." *Baldwin Mutual Insurance Co. v. Adair*, 181 So. 3d 1033, 1042 (Ala. 2014) (internal quotes omitted). Specifically, "[t]he court should not define words it is construing based on technical or legal terms." *Herrera*, 912 So. 2d at 1143.

"A term is ambiguous only if, applying the ordinary meaning, one would conclude that the provision containing the term is reasonably susceptible to two or more constructions." *Herrera*, 912 So. 2d at 1144 (internal quotes omitted). "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Id.* at 1143; *accord Travelers Casualty and Surety Co. v. Alabama Gas Corp.*, 117 So. 3d 695, 700 (Ala. 2012). This principle extends to ambiguities regarding the amount the insurer is to pay. *Safeway Insurance Co. v. Amerisure Insurance Co.*, 707 So. 2d 218, 221, 223 (Ala. 1997).

As applied to this case, to prevail on the instant motion the defendant must show that the undefined term "actual cash value" could not reasonably be construed by a reasonable insured, lacking special knowledge or expertise and applying the ordinary meaning of the Policy language, as not including depreciation of labor costs. The Court concludes that the defendant has not met this burden.

In *Ballard v. Lee*, 671 So. 2d 1368 (Ala. 1995), *overruled in part on other grounds*, *State Farm Fire and Casualty Co. v. Owen*, 729 So. 2d 834 (1998), the policy, like the instant Policy, provided for replacement cost coverage, with the initial payment limited to an undefined "actual cash value" at the time of loss. *Id.*

at 1370.  When the plaintiff suffered a loss and the insurer applied depreciation in calculating ACV, the plaintiff sued the defendants for fraudulently suppressing that they would apply depreciation.  *Id*. at 1371.  The plaintiff understood the undefined term to mean "the amount of money that the property could reasonably be sold for in the marketplace," and witnesses within the industry concurred that the everyday meaning of the term was roughly fair market value.  *Id*. at 1374.  The Supreme Court ruled that this evidence "shows that the term 'actual cash value' has an accepted everyday meaning, which would be known by a layperson," *id*. at 1375, that does not envision any reduction for depreciation.

*Ballard* stands for the proposition that a person of ordinary intelligence, lacking special knowledge or expertise and applying the ordinary meaning of the words used, could reasonably understand the undefined term "actual cash value" as not involving depreciation and thus as not involving depreciation of labor costs. The defendant, however, insists *Ballard* is undone by a subsequent state insurance regulation.  (Doc. 27 at 12).

> When the insurance policy provides for the adjustment and settlement of losses on an actual cash value basis on residential fire and extended coverage, the insurer shall determine actual cash value according to one of the following:
> (a)     Replacement cost of property at time of loss less depreciation. ….
> (b)     Market value.
> (c)     As otherwise provided in the policy.

Ala. Admin. Code r. 482-1-125-09(2) (2003).[9]  According to the defendant, this regulation "controls" and "dictates" that the defendant apply depreciation, with the plaintiff "charged as a matter of public policy" with knowledge of the regulation's requirements because the regulation is "read into" the policy.  (Doc. 11 at 17; Doc. 27 at 11-12).

---

[9] The current version of this provision eliminates the second and third alternatives.  The defendant correctly relies on the previous version, as it was in effect during the life of the Policy.  (Doc. 1-2 at 15).

10

On its face, however, the regulation does not dictate that the defendant apply depreciation, because it does not dictate that the defendant use only the first of the three listed methods for calculating ACV. On the contrary, the very point of the regulation is to give the insurer multiple options, one of them being the same method (which does not involve depreciation) that the *Ballard* Court deemed the everyday meaning of "actual cash value." The plaintiff makes exactly this point in her responsive brief. (Doc. 15 at 29-30). Rather than assisting the defendant, the regulation simply underscores that "actual cash value" has multiple reasonable meanings, at least one of which excludes depreciation, which means the Policy's undefined use of the term cannot unambiguously provide for labor depreciation.

Even had the regulation required the defendant to use the first method of calculating ACV, the defendant has not demonstrated that the plaintiff was charged with knowledge of the regulation so as to render unreasonable any other understanding of the term. The defendant relies on *Barber Pure Milk Co. v. Alabama State Milk Control Board*, 156 So. 2d 351 (Ala. 1963); *Higgins v. Nationwide Mutual Insurance Co.*, 282 So. 2d 301 (Ala. 1983); and *Graffeo v. State Farm Fire & Casualty, Inc.*, 628 So. 2d 790 (Ala. Civ. App.1993). *Barber* states that "all men are charged as a matter of public policy with a knowledge of the law pertaining to their transactions," 156 So. 2d at 355, but the defendant has not endeavored to show that this glittering generality applies in an insurance context to alter the rules of policy construction described above and in countless Alabama cases.[10] *Higgins* is an insurance case, but it has nothing to do with the construction of undefined policy language; it holds only that, where an Alabama statute broadly requires automobile policies to include uninsured motorist coverage, "it is mandatory that Act No. 866, the governing law be read into the policy contract as it exists" so as to render void an exclusion of certain vehicles from such coverage. *Id*. at 303, 305. The "read[ing] into" language appears to be

---

[10] The Court has been unable to locate any insurance case citing *Barber*.

figurative, but in any event *Higgins* merely charges insurers with doing what the law requires them to do; it does not charge insureds with knowledge of those requirements. *Graffeo* states that, "[i]n the absence of a definition within the policy or by statute or case law, the term replacement cost must be given its common meaning," *id*. at 791, but it does so without citing any authority for the proposition that an undefined policy term can be construed against the insured based on a statutory definition not found in the policy.[11] Nor does *Graffeo* identify regulations as a source of such definitional power. Moreover, the defendant fails to effectively address *Herrera*, which held that a statutory definition of "forcible entry" was "inapposite" to the construction of the undefined term in an insurance policy. 912 So. 2d at 1144.[12] The Court does not rule that regulations cannot provide controlling definitions missing from a policy to the detriment of the insured, but it does rule that the defendant has failed to show they can.[13]

Moving on from the regulation, the defendant argues that "[t]he Alabama Supreme Court has recognized for decades that a determination of actual cash value must include a deduction for depreciation." (Doc. 11 at 18 n.11). This proposition has some support in the case law. *Glen Falls Insurance Co. v. Garner*, 155 So. 533, 536 (1934) ("'Actual cash value' means, and can only mean, what the thing is worth in money, allowing for depreciation."); *Reliance Insurance Co. v. Substation Products Corp.*, 404 So. 2d 598, 609 (Ala. 1981) ("Actual cash value

---

[11] The single case *Graffeo* cites supports only the "common meaning" portion of its statement.

[12] According to the defendant, *Herrera* precludes *insureds* from relying on statutory definitions to construe undefined policy language but permits *insurers* to do so. (Doc. 27 at 12). The defendant identifies no authority or justification for such a blatant double standard.

[13] Because the defendant has not shown the regulation's relevance, the Court need not consider the defendant's argument that the regulation's first alternative not only permits but mandates depreciation of labor as well as materials. (Doc. 11 at 19).

means what the property is worth in money, allowing for depreciation.") (citing *Glen Falls*). The Alabama Supreme Court's most recent pronouncement, however, is contained in *Ballard*, which rejects the proposition that the undefined term unambiguously includes depreciation, and the defendant's even more recent regulation confirms that the term can reasonably be read as excluding depreciation. The defendant has offered no basis for concluding that its cases, to the extent they may support its position, survive *Ballard*.

The defendant's task would appear to be two-fold. First, it must establish that "actual cash value" unambiguously includes depreciation. Second, it must establish that depreciation unambiguously includes labor depreciation. As discussed above, the defendant has not accomplished its first task. It is not clear that this failure is fatal to its motion, however, because the plaintiff frames the issue, not as whether the Policy unambiguously permits depreciation in calculating ACV, but as whether it unambiguously contemplates depreciation of labor as well as materials. (Doc. 15 at 32). The Court thus turns to that question.

No Alabama state court has resolved this issue.[14] The defendant relies upon several state and federal cases to demonstrate that "actual cash value" unambiguously includes labor depreciation. The plaintiff relies on several state and federal cases to the contrary. The Court finds the plaintiff's cases more persuasive.

The earliest cited case is *Redcorn v. State Farm Fire & Casualty Co.*, 55 P.3d 1017 (Okla. 2002).[15] The policy at issue provided ACV (not RCV) as the full measure of recovery. *Id*. at 1018-19. As here, "actual cash value" was not defined by the policy. *Id*. at 1019. The Court concluded that the term "has a specific

---

[14] The only Alabama decision cited by either party is a trial court's unexplained, one-sentence denial of an insurer's motion for summary judgment, (Doc. 15-3), which the Court finds to be unhelpful.

[15] The *Redcorn* Court understood that it was addressing a question of first impression nationally. 55 P.3d at 1021 (Boudreau, J., dissenting).

meaning that has been construed by this Court, and is not ambiguous." *Id*. Past decisions had already determined that the ACV of a destroyed building is determined by a "broad evidence rule," whereby "all relevant factors" are considered, "includ[ing] depreciation." *Id*. at 1020. Depreciation extends to labor costs because "[a] building is the product of both materials and labor." *Id*. Since the plaintiff paid for an ACV policy, he would be over-indemnified and unjustly enriched were he to receive undepreciated labor costs for his damaged roof. *Id*. at 1021.

*Redcorn* was a 5-3 decision. The dissenters rejected the characterization of a roof as a single, integrated product, since it is not purchased pre-assembled but must be created post-purchase by combining a product (shingles) with a service (labor to install the shingles). 55 P.3d at 1022 (Boudreau, J., dissenting). While the shingles physically deteriorate and are thus properly subject to depreciation, labor "is not logically depreciable." *Id*. Thus, depreciating labor "does not logically tend to establish the correct estimate of the actual cash value of the roof at the time of the loss," as required by the broad evidence rule. *Id*. at 1023. The dissenters also disagreed that the plaintiff would be over-indemnified under such a paradigm. *Id*.

In *Papurello v. State Farm Fire & Casualty Co*., 144 F. Supp. 3d 746 (W.D. Pa. 2015), the policy, like the instant Policy, was an RCV policy with ACV payable as a first step. *Id*. at 758-59. Like the Policy, the *Papurello* policy did not define ACV but stated that the insurer would pay "the actual cash value at the time of the loss on the damaged part of the property," subject to certain limits. *Id*. at 759. The Court ruled that "property" as used in this provision unambiguously means "the *finished* product in issue – the *result* or physical manifestation of combining" labor and materials. *Id*. at 770 (emphasis in original). Thus, the plaintiff was entitled only to ACV as to both labor and materials, yet failing to depreciate labor would "equat[e] impermissibly to full 'replacement cost'" for

labor before repairs were undertaken, even though the policy provided for RCV only after repairs were completed. *Id.*

*Henn v. American Family Mutual Insurance Co.*, 894 N.W.2d 179 (Neb. 2017), like *Papurello*, involved an RCV policy with a first-step ACV payment and no definition of ACV. *Id.* at 182. Unlike in *Papurello*, the parties agreed that ACV is replacement cost minus depreciation. *Id.* Based largely on a body of "well-developed [Nebraska] case law on the definition of actual cash value," the *Henn* Court concluded that "[t]he unambiguous definition of actual cash value is a depreciation of the whole." *Id.* at 190. The Court also emphasized its "broad evidence rule," under which depreciation of both labor and materials is relevant. *Id.* at 189. The Court additionally agreed that payment of undepreciated labor would be tantamount to RCV as to labor rather than ACV and would result in a "prepayment of unearned benefits." *Id.* at 189-90.

*Graves v. American Family Mutual Insurance Co.*, 2015 WL 4478468 (D. Kan. 2015), involved a two-step RCV policy that defined ACV as "the amount which it would cost to repair or replace damaged property with property of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence." *Id.* at *1. The Court concluded that a reasonable person in the plaintiff's position "would expect [the insurer] to depreciate all costs necessary to (re)creating the insured 'property' – including the costs associated with labor – when calculating actual cash value." *Id.* at 3. The insured "property," the Court explained, is "ordinarily understood as an indivisible output" such as a roof; it is the combined product that is valuable to the insured and that she seeks to protect from loss, and it is concern for the value of that "ultimate tangible form" that the policy contemplates. *Id.* at *3-*5. The Court reasoned that, since "[t]he value of the finished product diminishes," both the materials and the labor invested in the product diminish in value, and each is thus subject to depreciation. *Id.* The plaintiff's view, the Court warned, confuses ACV with RCV and would unjustly enrich her. *Id.* at *4-*5.

The Tenth Circuit recently affirmed the District Court in *Graves* on the grounds that the plaintiff's argument "would in effect reduce, if not eliminate, the distinction between an 'actual cash value' policy and the more expensive 'replacement cost' policy," allowing the insured to "receive a windfall … contrary to the principle of indemnity." *Graves v. American Family Mutual Insurance Co*., 2017 WL 1416278 at *1, *3 (10th Cir. 2017). The panel distinguished a contrary Arkansas decision on the grounds the policy at issue did not define ACV. *Id*. at *3. The Court declined to "dissect depreciation into separate components of materials and labor costs" because <u>Black's Law Dictionary</u> ("<u>Black's</u>") identifies ten depreciation methods, none of which distinguish between materials and labor. *Id*. at *4.

The policy in *Ware v. Metropolitan Property and Casualty Insurance Co*., 220 F. Supp. 3d 1288 (M.D. Ala. 2016), was a two-step RCV policy, with ACV defined identically, for present purposes, with the *Graves* policy. *Id*. at 1289.[16] The *Ware* Court concluded that, because this definition envisions depreciation from "the entire estimated cost of repairing the covered property," it "logically follows that the depreciation allowance includes depreciation of the full estimated cost of repair, which obviously includes materials and labor." *Id*. at 1291. The policy's failure to make an express distinction between labor and material repair costs further supported the Court's view. *Id*.

The policy in *Brown v. Travelers Casualty Insurance Co. of America*, 2016 WL 1644342 (E.D. Ky. 2016), did not define ACV, but the parties agreed that it meant replacement cost "less depreciation." *Id*. at *2. The Court did not focus on whether the undefined term, "actual cash value," unambiguously encompasses labor depreciation. Instead, the Court addressed whether and when labor depreciates. Beginning with <u>Black's</u> definition of "depreciation," the Court

_____

[16] The *Ware* policy exchanged "repair or replace *damaged* property with *property* of like kind and quality," 2015 WL 4478468 at *1 (emphasis added), for "repair and replace *covered* property with *material* of like kind and quality." 220 F. Supp. 3d at 1289 (emphasis added).

concluded that labor does depreciate when it increases the market value of a good, but not otherwise. *Id*. at *2-4. Because the defendant failed to demonstrate that all of the plaintiff's claimed damages fell in the former category, the Court denied its motion for judgment on the pleadings. *Id*. at *4.

Finally, just last week a sister court in Colorado addressed a policy that defined ACV as including depreciation and that further warned that ACV "may be significantly less than … replacement cost." *Basham v. United Services Automobile Association*, 2017 WL 3217768 at *1 (D. Colo. 2017). The Court held that "the specific policy language here" was unambiguous and that, given that language "and background insurance principles" regarding indemnity, a reasonably prudent insured would understand that depreciation would be applied to labor costs. *Id*. at *2-*4. While agreeing that "labor does not depreciate" because it is a service rather than an asset, the Court noted that labor can increase the value of an asset or create a new one (like a roof), which asset can depreciate.

Before assessing the defendant's cases, the Court offers a reminder of the issue before it. The only question presented by the defendant's motion is whether, under Alabama law, the undefined term "actual cash value" unambiguously includes depreciation of labor costs. If a reasonable insured in the plaintiff's position, not possessing specialized knowledge or expertise about such matters and knowing only the Policy language and the common, everyday meaning of the language employed, could reasonably understand that ACV does not include depreciation of labor costs, the term is ambiguous and the defendant's motion must fail. It does not matter if the defendant's construction is also reasonable; it does not even matter if the defendant's construction is (before or after initiation into various property and insurance concepts) more reasonable.

The single most unifying theme of the defendant's cases is the concern that accepting the insured's view would lead to at least a temporary overpayment of the insured beyond her actual loss, resulting in a windfall or unjust enrichment contrary to the indemnity theory of insurance. There may be reason to question

this concern[17] but, in any event, the defendant has failed to show that it has any bearing on how a reasonable insured would construe the undefined term "actual cash value." The defendant certainly has not attempted to show that Alabama law requires insureds, before forming an understanding of what undefined policy terms mean, to discover and ponder the myriad and largely hidden commercial and societal considerations that underlie the insurance industry and its oversight by the three branches of state government. The Court therefore deems any risk of over-indemnity irrelevant to its analysis.[18]

A related complaint expressed in several of the defendant's cases is that making undepreciated labor payable as part of ACV would erase the line between ACV and RCV. As with over-indemnity, this objection appears to be grounded in an understanding of these two concepts that is perhaps common among insurers and others with specialized knowledge but independent of the actual language used in the policies at issue. To that extent, the Court considers the objection irrelevant to how a reasonable insured would construe the undefined term "actual cash value."

---

[17] Several of the plaintiff's authorities consider depreciation of labor from ACV to under-indemnify the insured. Moreover, the defendant has not demonstrated that over-indemnity is a proper concern in the context of an RCV policy. According to the defendant, indemnity means being placed in the same position after the loss as before the loss – no better and no worse. (Doc. 11 at 25). But the very point of an RCV policy is to place the insured in a better position than she previously occupied (because she trades a used roof for a new one paid for by the insurer). It is thus less than obvious that an initial payment under an RCV policy that (per the defendant's cases) likewise places her in a better position than she previously occupied (receiving more than her used roof was worth) constitutes a meaningful over-indemnity.

[18] Even if there is a risk of over-indemnity, the defendant has not explained why it should be judicially protected from this foreseeable consequence of its own imprecise drafting regarding an issue of which it has been actually aware (as the defendant in *Redcorn*) since at least 2002. That the defendant scraped by with a 5-3 decision might well have prompted a reasonable insurer to consider defining ACV so as to eliminate any controversy.

To the extent this argument is based on policy language, it is potentially relevant to the issue at hand. Again, however, that language must be given its ordinary sense and construed as a reasonable lay insured would construe it, not how an insurer, a court, or another with specialized knowledge of what ACV and RCV are "supposed" to accomplish would view it. The defendant has offered no textual analysis of the Policy to demonstrate that a reasonable insured would unambiguously understand that she could not receive undepreciated labor until after completing the repairs/replacement. The defendant says only that the Policy "expressly stat[es] that full replacement cost is not owed until repairs are performed." (Doc. 11 at 23). What the Policy actually says is that the defendant will pay "the cost to repair or replace" the damaged property, with an initial payment of "actual cash value" (whatever that means) before repair/replacement is completed, and a second payment of "the covered additional amount" (whatever that is) once repair/replacement is timely completed and proof of same presented. (Doc. 1-2 at 28). This language clearly means that the two payments add up to the total cost of repair or replacement, but it does not say or even suggest that depreciation is paid only at the second step. The defendant's textual argument thus does nothing to advance its position that the Policy unambiguously calls for depreciation of labor from the initial payment of ACV.

Other matters that influenced the resolution of the defendant's cases, even if arguably relevant to the meaning of "actual cash value," do not apply here. The defendant has identified no well-developed Alabama case law demonstrating that ACV encompasses depreciation for labor and, as discussed above, *Ballard* reflects that the common understanding of ACV does not encompass depreciation at all. Nor has the defendant shown that Alabama embraces a "broad evidence rule" that requires depreciation to be considered. The Court cannot look to Black's definitions of "depreciation" because its definitions are "inapposite" to undefined

policy terms.[19]  Finally, the Court cannot examine the wording and syntax of the Policy's definition of ACV because, again, no such definition exists.

Thus, the only substantial argument appearing in the defendant's cases that could be applied here focuses on the conception of the insured "property" as a "product" of both materials and labor.  The precise explanations vary, but the basic idea is that, because the property/product diminishes in value over time, depreciation must be applied to all components of the property/product, including labor.  The Policy likewise provides for payment of ACV as to the damaged portion of the insured "property," so there is at least an opening for applying the argument in this case.

The Court assumes for present purposes that this rationale supports a reasonable construction of ACV as providing for depreciation of labor costs, especially when the policy (as in *Graves*, *Ware* and *Basham*) defines ACV as involving depreciation.  Again, however, the question is whether the plaintiff's construction is also reasonable.  The jurists in the plaintiff's cases have all thought so.[20]

As noted, the three *Redcorn* dissenters concluded that labor "is not logically depreciable." 55 P.3d at 1022 (Boudreau, J., dissenting).  The Supreme Court of Arkansas found this dissent "convincing" and "simply [could] not say that labor falls within that which can be depreciable." *Adams v. Cameron Mutual Insurance Co.*, 430 S.W.3d  675, 678, 679 (Ark. 2013).  The Court in *Bailey v. State Farm Fire and Casualty Co.*, 2015 WL 1401640 (E.D. Ky. 2015), likewise found the *Redcorn* dissent "more persuasive" and "compelling," to the point that "[t]he very idea of depreciating the value of labor defies good common society." *Id*. at *7-*8. And in *Wilcox v. State Farm Fire and Casualty Co.*, 2015 WL 927093 (D. Minn.

---

[19] *Herrera*, 912 So. 2d at 1144.

[20] The Court does not consider the various state trial court decisions proffered by the plaintiff.

2015), a Magistrate Judge agreed with the *Redcorn* dissent that "depreciating labor in an actual cash value policy does not make logical sense." *Id*. at *4.[21] Even *Brown*, which the defendant advances as supporting its position, ruled both that labor cannot be depreciated when (as with the installation of a home alarm system) it does not increase the market value of the material, and that for many items (such as installing walls) it is far from clear whether the labor depreciates or not. 2016 WL 1644342 at *3-*4. Similarly, the Minnesota Supreme Court concluded that "certain [not "all"] embedded labor costs *may* be [not "are"] depreciable, depending on the facts and circumstances of the particular case." *Wilcox v. State Farm Fire and Casualty Co*., 874 N.W.2d 780, 785 (Minn. 2016) (emphasis in original).

Construing a policy substantively identical to the Policy, the Court in *Labrier v. State Farm Fire and Casualty Co*., 147 F. Supp. 3d 839 (W.D. Mo. 2015), ruled that both ACV and the missing term "depreciation" are ambiguous, with some common meanings of the latter term "focus[ed] on material condition," *id*. at 849; thus, while an ordinary lay person reading the policy would understand that ACV is less than RCV, she would not be able to tell "what is being deducted at the first step." *Id*. at 850.[22] Even with a policy defining ACV to include depreciation "for physical deterioration and obsolescence," Judge Bough concluded that the quoted language limited the permissible depreciation to materials, not labor. *Riggins v. American Family Mutual Insurance Co*., 106 F. Supp. 3d 1039, 1040-41 (W.D. Mo. 2015). The Court in *Lains v. American*

---

[21] The District Court did not adopt the Magistrate Judge's recommendation to deny the defendant's motion to dismiss the breach of contract claim but instead adopted the alternative recommendation to certify the question to the Minnesota Supreme Court. *Wilcox v. State Farm Fire and Casualty Co*., 2015 WL 927342 (D. Minn. 2015).

[22] Judge Laughrey issued a second, substantively similar opinion in *Boss v. Travelers Home & Marine Insurance Co*., 2016 WL 3983833 (W.D. Mo. 2016).

*Family Mutual Insurance Co.*, 2016 WL 4533075 (W.D. Wash. 2016), found the same language capable of either construction and thus ambiguous. *Id.* at *1, *2.

The Court does not adopt all the reasoning of the plaintiff's cases. Some of them, for example, invoke indemnity principles, some rely on <u>Black's</u> definitions, and some do not view the issue through the prism of a reasonable insured. But they point the way to the correct resolution of the defendant's motion, because they make clear that a reasonable insured, armed only with the Policy language and everyday meaning of the words used, could reasonably understand that ACV does not encompass depreciation of labor costs.[23]

First, a reasonable insured could reasonably understand that labor does not depreciate. As reflected and explained in the cited cases, this is a plausible conception for a wealth of thoughtful, knowledgeable judges, and it is even more so for lay insureds with no special competence in property or insurance matters. Second, and related to the first, a reasonable insured could reasonably understand that depreciation in its everyday sense applies only to physical deterioration, and she could reasonably understand that labor does not sustain such deterioration because it is not physical. Third, a reasonable insured in the plaintiff's position could reasonably understand that the Policy does not call for depreciation of things that do not depreciate, due to the inherent logical contradiction of depreciating non-depreciating things.[24]

---

[23] While not essential to this conclusion, the Court notes that the defendant has injected evidence that "[s]ome adjusters believe only the material and not the labor should be depreciated." (Doc. 11 at 28). While the defendant focuses on the conclusion of the source material's author that such a position "makes little sense," (*id.*; Doc. 27 at 14), the fact remains that the defendant has confirmed that some percentage of insurance adjusters, like some percentage of jurists, share the plaintiff's understanding.

[24] The defendant insists that depreciation of labor costs occurs in other contexts – including tax law, maritime law and appraisals – and under various state statutes and regulations. (Doc. 11 at 21, 26 n.16, 28-29 & 29 n.17). A reasonable insured, however, is not charged with knowledge of these usages, and the defendant has failed to explain how they could negate the reasonableness of construing the Policy as not providing for depreciation of labor costs.

**CONCLUSION**

It is clear that the plaintiff has standing to pursue her claim. Moreover, the defendant has not demonstrated that the Policy unambiguously provides for depreciation of labor costs. Accordingly, and for the reasons set forth above, the defendant's motion to dismiss is **denied**, and the plaintiff's motion to remand is **denied**.

DONE and ORDERED this 3rd day of August, 2017.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE