# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| ANNIE ARNOLD, etc., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 17-0148-WS-C |
| | ) |
| STATE FARM FIRE AND | ) |
| CASUALTY COMPANY, | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on the defendant's motion for Section 1292(b) findings, certification of question, and reconsideration. (Doc. 32). The parties have filed briefs in support of their respective positions, (Docs. 33, 37, 38-1, 47, 52),[1] and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be denied in its entirety.

## BACKGROUND

This action was filed in state court and timely removed by the defendant. According to the class action complaint, (Doc. 1-2 at 1-14), the plaintiff's house was insured by the defendant under a policy ("the Policy") providing replacement cost value ("RCV") coverage. Payment on covered losses under such policies proceeds in two stages. Initially, the defendant pays actual cash value ("ACV"), which it calculates as the estimated cost of materials and labor required to complete the removal of damaged materials and subsequent repairs, less depreciation. The defendant pays the difference between ACV and RCV only if the insured accomplishes the repairs, rebuilding or replacement of the damaged property within a specific time frame and submits proof of same to the defendant.

---

[1] The defendant's motion for leave to file a reply brief, (Doc. 38), is **granted**.

The insured therefore must front repair/replacement costs exceeding the ACV payment. In the plaintiff's case, and as a rule, in calculating ACV the defendant depreciates both materials and labor. The single claim presented is that the defendant breached its contractual duty to pay ACV by unlawfully depreciating labor costs.

The defendant moved to dismiss for lack of standing and for failure to state a claim on which relief can be granted. (Doc. 10). As to standing, the defendant argued generally that, because it had paid the plaintiff RCV, including her undepreciated labor costs, before she filed suit, she had been made whole and thus had no injury that this action could redress. Although the plaintiff seeks prejudgment contractual interest on the amount of the withheld labor depreciation, as provided by statute, the defendant argued the plaintiff could not satisfy the elements for recovery of such interest. The Court ruled that the defendant's argument went not to standing but to the merits of the dispute and accordingly held the plaintiff possesses standing. (Doc. 31 at 2-8).

As to failure to state a claim, the defendant argued on several grounds that the undefined policy term "actual cash value" unambiguously encompasses depreciation of labor. The Court addressed each of these grounds and determined that, viewing the issue through the lens required by Alabama law, the defendant had failed to demonstrate the correctness of its position. (Doc. 31 at 8-23).


**I. Interlocutory Appeal.**

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). "[Section] 1292(b) certification is wholly discretionary with both the district court and this Court." *OFS Fitel, LLC v. Epstein, Becker and*

*Green, P.C.*, 549 F.3d 1344, 1358 (11th Cir. 2008).  "Furthermore, §1292(b) sets a high threshold for certification to prevent piecemeal appeals," and "[m]ost interlocutory orders do not meet this test."  *Id*. at 1359.

### A.  Standing.

All agree that the first element of constitutional standing is "injury in fact," which requires the "invasion of a legally protected interest."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Such an interest may be legally protected by statute[2] or by contract.[3]  Alabama law provides that [a]ll contracts … for the payment of money … bear interest from the day such money … should have been paid."  Ala. Code § 8-8-8.  This term "is read into and becomes a part of the insurance contract" and is thus "a contractual right."  *Thomas v. Liberty National Life Insurance Co*., 368 So. 2d 254, 258 (Ala. 1979).  The Court ruled that the plaintiff thus had a legally protected interest, by statute and by contract, in prejudgment interest.  (Doc. 31 at 4-5).

The defendant argued (and argues) the plaintiff has no legally protected interest in prejudgment interest because she cannot show that the day she "should have been paid" undepreciated labor ever arrived.  This argument proceeds along the following lines.  First, that the Policy provides that payment is due 60 days after presentation of proof of loss and that the plaintiff never presented proof of loss.  Second, that even though the defendant's actual payment of ACV (with labor depreciated) would usually work a waiver of the proof-of-loss requirement, no waiver occurred because (a) the Policy contains a no-waiver provision and (b) the defendant did not realize its payment would work a waiver.  (Doc. 31 at 5).

The defendant insisted (and insists) that its argument goes to standing and not the merits, but the Court remains unpersuaded.  As noted, the plaintiff's right

---

[2] *Primera Iglesia Bautista Hispana, Inc. v. Broward County*, 450 F.3d 1295, 1304 (11th Cir. 2006).

[3] *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005).

to prejudgment interest is by law embedded in the parties' contract; what the defendant argues is that, though the contract by law provides for prejudgment interest, the plaintiff cannot recover such interest *in this case* because she did not satisfy the contractual requirements for its recovery. The situation is thus no different than that of any other insurer arguing that it owes its insured nothing because she did not comply with conditions (such as presenting proof of loss) expressed in the Policy. The insurer may be correct, but its assertion goes to the merits of the parties' dispute, not to whether the insured has any legally protected interest.

As the Court noted in its order, (Doc. 31 at 6), "[s]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Interface Kanner, LLC v. JP Morgan Chase Bank*, 704 F.3d 927, 932 (11th Cir. 2013) (internal quotes omitted). The defendant responds that, when "an element of standing overlap[s] with at least one essential element of a plaintiff's substantive claim," a court can look at the factual underpinnings of standing without running afoul of this rule. (Doc. 33 at 15). This is correct but inapposite. The defendant's insurmountable problem is that its challenge goes exclusively to the merits and does not impact the predicate issue of standing.

The defendant disagrees and cites *Interface Kanner* and *Avenue CLO Fund Ltd. v. Bank of America*, 709 F.3d 1072 (11th Cir. 2013), as demonstrating, by some unidentified "analog[y]," that its argument goes to standing. (Doc. 33 at 16). In both these cases, the question was whether the plaintiff was a third party beneficiary of the contract under which it sued. As noted, a legally protected interest must flow from some source such as contract. A plaintiff that is neither a party to the contract, a successor in interest to a party to the contract, nor a third party beneficiary of the contract is in law a stranger to the contract and so can have

4

no legally protected interest in the contract.[4]  These cases are thus not analogous to the instant case but rather highlight the chasm lying between them.  The plaintiff here is a party to the contract and thus has standing to pursue a claim for its breach; whether she succeeds or fails depends on the merits of the dispute.

The defendant concludes that it "has demonstrated substantial ground for disagreement with this Court's conclusion that it should not reach [the defendant's] evidence and argument for its Rule 12(b)(1) motion."  (Doc. 33 at 16).  The defendant's argument and authorities, however, actually confirm the Court's previous ruling.  Because the Court perceives no "substantial ground for difference of opinion" as to its ruling on standing, the defendant's motion for interlocutory appeal of the standing issue is **denied**.


## B.  Failure to State a Claim.

Without apparent conviction, the defendant suggests in passing that the Court should certify for interlocutory appeal the question whether the undefined Policy term "actual cash value" unambiguously encompasses depreciation for labor.  (Doc. 33 at 17).

The plaintiff questions whether this represents a "controlling question of law."  (Doc. 37 at 8).  She notes that the Eleventh Circuit in *McFarlin v. Conseco Services, LLC*, 381 F.3d 1251 (11th Cir. 2004), quoted with approval a Seventh Circuit case concluding that a "question of law" under Section 1292(b) "'has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine.'"  *Id*. at 1258 (quoting *Ahrenholz v. Board of Trustees*, 219 F.3d 674, 676 (7th Cir. 2000)).  *Ahrenholz*, she notes, stated further that "[w]e also think … that the question of the meaning of a contract, though technically a question of law when there is no other evidence but the written

---

[4] *Bochese*, 405 F.3d at 981 ("As a non-party, to sue to enforce the contract, [the plaintiff] can only establish standing if he was an intended third-party beneficiary of the rescinded agreement.").

contract itself, is not what the framers of section 1292(b) had in mind, either." 291 F.3d at 676. The *McFarlin* Court, however, did not acknowledge or embrace this statement, and it is not clear the Eleventh Circuit would do so. *See Technical Coating Applicators, Inc. v. U.S. Fidelity and Guaranty Co.*, 157 F.3d 843, 844 (11th Cir. 1998) (appellate court accepted an interlocutory appeal under Section 1292(b) "to review the district judge's determination that the absolute pollution exclusion is ambiguous under Florida law").

Assuming without deciding that the defendant presents a controlling question of law, the Court finds no "substantial ground for difference of opinion." To satisfy this element, the defendant relies exclusively on *Ware v. Metropolitan Property and Casualty Insurance Co.*, 220 F. Supp. 3d 1288 (M.D. Ala. 2016). (Doc. 33 at 17, 22-25). In *Ware,* unlike in this case, the policy defined "actual cash value," and the *Ware* Court ruled that this "policy language unambiguously" contemplated depreciation of labor costs. *Id*. at 1289; *accord id*. at 1291. Because "actual cash value" is not defined in the Policy, and because the *Ware* Court did not address the matters this Court discussed in construing the undefined term, the Court does not believe that *Ware* furnishes substantial ground for difference of opinion as to the issue the Court decided. Accordingly, the defendant's motion for interlocutory appeal of the ACV issue is **denied**.

## II.  Certification to the Alabama Supreme Court.

Alabama procedure permits a federal court to certify to the Alabama Supreme Court questions of state law "which are determinative of said cause and [as to which] there are no clear and controlling precedents" from the state Supreme Court. Ala. R. App. P. 18(a). The defendant, having lost its motion to dismiss, now proposes that the Court certify the question whether a state insurance regulation that was not incorporated into the Policy or referenced by the Policy nevertheless supplies the governing definition of "actual cash value" so as to render the undefined Policy term unambiguous and, if so, whether that regulatory

definition (which is silent on the matter) requires depreciation of labor as well as materials.  (Doc. 33 at 19).

"The decision whether to certify a question of state law to a state supreme court is committed to this court's discretion …." *Smigiel v. Aetna Casualty & Surety Co.*, 785 F.2d 922, 924 (11th Cir. 1986).  "In determining whether to exercise our discretion in favor of certification, we consider many factors." *State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274 (5th Cir. 1976).  "The most important are the closeness of the question and the existence of sufficient sources of state law – statutes, judicial decisions, attorney general's opinions – to allow a principled rather than conjectural conclusion." *Id*. at 275.  "But also to be considered is the degree to which considerations of comity are relevant in light of the particular issue and case to be decided," which includes "the likelihood of the recurrence of the particular legal issue." *Id.* & n.29.  "And we must also take into account practical limitations of the certification process:  significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court." *Id*. at 275.

Other factors merit consideration as well.  Because Rule 18(a) limits certification to questions that are "determinative of said cause," certification is inappropriate if the question "would not be dispositive." *Harrison v. Jones*, 880 F.2d 1279, 1283 n.4 (11th Cir. 1989).  It must also be remembered that "state courts, like their federal counterparts, are busy institutions, with their own caseloads to manage," *Escareno v. Noltina Crucible and Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir. 1998), and unnecessary certified questions – whether accepted or declined by the state court – can burden an already heavily loaded state system.  Finally, "[i]n addition to the usual considerations," a federal court should consider "an amazing irony[:] [the defendant], which now prays for an opinion from a[n] [Alabama] court, … remove[d] the case from the jurisdiction of the state courts." *Smigiel*, 785 F.2d at 924.

The bottom line is that "federal litigants have no right to insist upon certification," even as to "difficult or uncertain questions of state law," and the federal courts "will continue to exercise discretion and restraint in deciding to certify questions to state courts." *Escareno*, 139 F.3d at 1461.

The defendant, ignoring these authorities, suggests that certification should be employed whenever there is "any doubt as to the application of state law." (Doc. 33 at 18). The Eleventh Circuit did employ such language in *Mosher v. Speedstar Division of AMCA International, Inc*., 52 F.3d 913, 916-17 (11th Cir. 1995), and a number of appellate decisions have repeated that language since, citing only *Mosher*. *E.g., CSX Transportation, Inc. v. City of Garden City*, 325 F.3d 1236, 1239 (11th Cir. 2003).

The Court does not believe the "any doubt" standard can be taken at face value. First, several subsequent opinions, describing *Mosher*, have emended the qualifier "any" to the more restrictive "significant" or "substantial." *E.g., Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 827 F.3d 1016, 1025 (11th Cir. 2016); *Forgione v. Dennis Pirtle Agency, Inc*., 93 F.3d 758, 761 (11th Cir. 1996); *see also Ruderman ex rel. Schwartz v. Washington National Insurance Corp*., 671 F.3d 1208, 1212 (11th Cir. 2012) (reading "any doubt" as "truly debatable").

Second, other appellate opinions have been more direct in their questioning of *Mosher*. The *Escareno* Court, for example, quoted *Mosher* but continued to: (1) "underscore … the rule that certification of state law questions is a matter of discretion," even when doubt as to state law exists, as per Supreme Court precedent; (2) note that "[w]e sometimes will decide a question of state law, even when there is doubt as to how a state court would resolve the issue"; (3) point out that "[o]n many occasions this court has resolved difficult or uncertain questions of state law without recourse to certification"; and (4) upheld "our practice to [certify questions] with restraint and only after the consideration of a number of factors," specifically, those identified in *Shevin*. 139 F.3d at 1460-61.

Third, the only authority cited by the *Mosher* panel in support of an "any doubt" standard was *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394 (5th Cir. 1986) (en banc). The Court is unable to locate in *Jackson* either that language or any language suggesting such a standard for certification.

Fourth, under the "prior panel precedent" rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Sneed*, 600 F.3d 1326, 1332 (11th Cir. 2010). The *Shevin* standard predates the *Mosher* formulation by almost 20 years and, to the extent it constitutes holding, it could not be undone by *Mosher*. Even if *Shevin* issued no holding as to how to resolve a certification issue, the Court will not lightly infer that the Eleventh Circuit has abandoned it, especially since post-*Mosher* decisions continue to rely on the same considerations. *E.g., Hammonds v. Commissioner, Department of Corrections*, 822 F.3d 1201, 1208 (11th Cir. 2016); *Royal Capital Development, LC v. Maryland Casualty Co.*, 659 F.3d 1050, 1055 (11th Cir. 2011); *Jennings v. BIC Corp.*, 181 F.3d 1250, 1254 n.2 (11th Cir. 1999).

The defendant raised its regulatory argument in its motion to dismiss. The argument is no stronger now than it was then. An unbroken line of Alabama cases requires that undefined terms in an insurance policy be given their common, everyday meaning and be interpreted as a reasonable insured would have understood them. Expressly forbidden is defining undefined policy terms based on technical or legal definitions. (Doc. 31 at 9). In the face of this clear and direct precedent, the defendant offers three cases that, for reasons thoroughly explored in the Court's order, (*id*. at 11-12), provide no truly colorable support for its position.

The defendant insists "there is no Alabama authority holding that an insured reasonably may interpret an insurance policy term in a manner that contradicts the definition supplied by Alabama's insurance statutes and/or regulations." (Doc. 33 at 21). This appears to be correct, but it misses the point. What the Court considers are "the closeness of the question" and "the existence of

9

sufficient sources of state law … to allow a principled rather than conjectural conclusion." *Shevin*, 526 F.2d at 275. Alabama law is clear as to what may and may not be considered in pouring content into an undefined policy term, and legal definitions not mentioned by the policy fall outside the permissible range. While it is presumably possible the Alabama Supreme Court could create an exception for legal definitions that are contained in insurance statutes or regulations and unknown to insureds – thereby thwarting their reasonable understanding based on the undefined and ambiguous policy language voluntarily employed by the insurer – nothing presented by the defendant suggests the possibility is more than merely theoretical.[5] The question is not close, and Alabama precedent is sufficient to allow a principled conclusion that no such exception would be created.

The defendant attempts to bolster its position by arguing that considerations of efficiency in this action, recurrence of the issue in other actions, and the decision by sister courts in other Circuits to certify similar issues, justify certification here. (Doc. 33 at 25-28). By the defendant's admission, efficiency could be served only if the defendant were to prevail in state court. (*Id*. at 25). Otherwise, the progress of this action would be delayed by months for a certification decision and perhaps much longer were certification granted. Given

---

[5] A brief survey of Alabama cases indicates that the primary purpose of regulating the insurance industry is to protect insureds. *See, e.g., Ex parte Connecticut Mutual Life Insurance Co*., 703 So. 2d 929, 931 (Ala. 1997) (replacement life insurance); *Custard Insurance Adjusters, Inc. v. Youngblood*, 686 So. 2d 211, 215 (Ala. 1996) (regulation of insurance business); *Aetna Casualty & Surety Co. v. Turner*, 662 So. 2d 237, 239 (Ala. 1995) (uninsured motorist coverage); *Hyde v. Humana Insurance Co*., 598 So. 2d 876, 879 (Ala. 1992) (exclusion from policy of any insurer constituent document not fully set forth in the policy); *United Bonding Insurance Co. v. W.S. Newell, Inc*., 232 So. 2d 616, 621 (Ala. 1969) (countersigning by resident agents). What the defendant proposes is the exact opposite – using an insurance regulation to deny an insured the benefit of the ambiguous policy language its insurer elected to use. The defendant has yet to articulate any plausible justification for this contortion.

The defendant asserts that *Ware* supports certification. (Doc. 33 at 24-25). The *Ware* Court, however, neither mentioned nor relied on any regulatory definition and so fails to suggest the Alabama Supreme Court might buy the defendant's theory.

the apparent unlikelihood of the defendant's success in state court, such a delay actually weighs against certification. *Shevin*, 526 F.2d at 275.

The defendant says the issue could recur because "at least some" Alabama insurers calculate ACV as it does, without defining "actual cash value" in the policy. (*Id*. at 26). The defendant provides neither evidence nor quantification of this assertion, but the Court assumes for argument that the issue could arise in a lawsuit involving another insurer. While "the likelihood of the recurrence of the particular legal issue" is "also to be considered," *Shevin*, 426 F.2d at 275 & n.29, the "most important" considerations are the closeness of the question and the existence of adequate legal sources to render a principled decision. *Id*. at 275. Thus, the possibility of recurrence does not outweigh the weakness of the underlying legal argument. Moreover, the "amazing irony" that the defendant now insists on the Alabama forum it spurned by removing this action counsels further against certification. *Smigiel*, 785 F.2d at 924. Finally, that sister courts are split on whether to certify (different) questions regarding ACV and labor depreciation, (Doc. 33 at 27),[6] says nothing about the propriety of certification in this Circuit or in this case.

For the reasons set forth above, the defendant's motion for certification is **denied**.

### III. Reconsideration.

The defendant challenges the Court's treatment of *Ballard v. Lee*, 671 So. 2d 1368 (Ala. 1995). In opposition to the defendant's motion to dismiss, the plaintiff described *Ballard* as holding that an insurer's usage of the undefined term "actual cash value" as meaning replacement cost minus depreciation could support a fraud claim because this definition of the term deviated from its accepted

---

[6] None of those cases involved an argument that an insurance regulation imposed on the undefined policy term "actual cash value" a meaning contrary to a reasonable meaning of the term, favorable to the insured, that would otherwise apply.

everyday meaning. (Doc. 15 at 31). The defendant acknowledged that, per *Ballard*, the ordinary meaning of ACV is "market value," but it dismissed *Ballard* as superseded by the regulation discussed in Part II. (Doc. 27 at 12).

The Court discussed *Ballard* in more detail than had the parties and concluded that the Alabama Supreme Court "ruled that th[e] evidence shows that the term 'actual cash value' has an accepted everyday meaning … that does not envision any reduction for depreciation." (Doc. 31 at 10 (internal quotes omitted)). The defendant objects to this ruling as constituting a manifest error of law. (Doc. 33 at 29).

The grant or denial of a motion to reconsider is left to the discretion of the trial court. *Chapman v. AI Transport*, 229 F.3d 1012, 1023024 (11th Cir. 2000) (en banc). Such a motion may not be used as a vehicle to inject new arguments into the underlying motion, or to submit evidence previously available but not properly presented on the underlying motion. *Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). Nor may it be used to "relitigate old matters." *Wilchombe v. TeeVee Toons, Inc*., 555 F.3d 949, 957 (11th Cir. 2009) (internal quotes omitted). Instead, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." *Gibson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. 2007) (internal quotes omitted).[7]

The defendant claims manifest error of law, but the Court is unpersuaded. The defendant argues that the everyday meaning of "actual cash value" recognized by the *Ballard* Court is "market value," and the Court assumes for present

---

[7] These rules apply to pre-judgment motions to reconsider as fully as they do to post-judgment motions under Rule 59. *E.g., Georgia-Pacific Consumer Products LP v. Zurich American Insurance Co*., 2016 WL 5853728 at *1 n.1 (S.D. Ala. 2016).

purposes that this is a fair approximation.[8] The defendant continues that the "market value" of a thing necessarily incorporates all factors relevant to its value, including its age and condition (which it considers to correspond to depreciation), and the Court for now indulges that assumption as well. Nothing in *Ballard*, however, suggests that the everyday meaning of "market value" is what a willing buyer would pay a willing seller considering the age and condition of the property, *minus* some depreciation factor.

It was this application of depreciation to which the plaintiff in *Ballard* objected. In deciding whether it was willing to insure the property, the defendant calculated its fair market value, which took depreciation into consideration. That figure exceeded policy limits. Since the market value of the property exceeded policy limits, the plaintiff understandably expected he would be paid policy limits when the building burned. Instead, the defendant subtracted further depreciation, which resulted in payment below market value and below policy limits. 671 So. 2d at 1374.

What the Court said in discussing *Ballard* is that a person without specialized knowledge could reasonably understand "actual cash value" to mean something like "fair market value" and could reasonably understand that depreciation is not deducted from fair market value. The defendant has not shown that proposition to be manifestly incorrect.

The defendant appears to believe the Court ruled that the ordinary meaning of fair market value does not contemplate consideration of age and condition/depreciation in *establishing* fair market value. The Court did not so

---

[8] The plaintiff understood "actual cash value" to mean "the amount of money that the property could reasonably be sold for in the marketplace." Other witnesses described the everyday meaning of the term as "the amount of money that [the insured's] property was worth when it burned," "fair market value," and "the value of something … for cash." 671 So. 2d at 1374. The *Ballard* Court concluded the evidence showed the term "has an accepted everyday meaning," but it did not express that meaning. *Id*. at 1375. The Court concluded that the everyday meaning acknowledged by the *Ballard* Court was "roughly fair market value." (Doc. 31 at 10).

rule; instead, it ruled that the ordinary meaning of fair market value does not contemplate subtracting depreciation *from* an established fair market value.

Nor could reconsideration alter the result of the defendant's motion to dismiss. That motion failed because the defendant failed to sustain its burden of showing that the undefined term "actual cash value" unambiguously contemplates depreciation of labor costs. (Doc. 31 at 23). That failure would remain intact even were the Court to reconsider its discussion of *Ballard*; the defendant does not argue otherwise. (Doc. 33 at 31-32).

For the reasons set forth above, the defendant's motion for reconsideration is **denied**.


DONE and ORDERED this 14th day of November, 2017.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE