IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANNIE ARNOLD, individually, and on behalf of all others similarly situated, | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | Case No.:  2:17-CV-148-TFM-C |
| STATE FARM FIRE AND CASUALTY COMPANY, | * | |
| | * | |
| Defendant. | | |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

I.      Arnold's Proposed Class Definition. ........................................................... 1

II.     The Policy Forms Applicable to the Putative Class Claims Are Not Identical. ..... 2

III.    State Farm's Estimating, Claim Handling, and Payment Practices in
        Alabama. ....................................................................................................... 4

        A.      ACV Payments Are Based on *Estimates* of the Cost to Repair the
                Damage. ........................................................................................... 4

        B.      Claims Often Proceed Differently Than Originally Estimated. ................. 6

        C.      Plaintiff Arnold's Individual Claim. ................................................. 7

        D.      The Non-Party Proposed Representatives. ...................................... 8

                1.      The Abney Claim ................................................................. 9

                2.      The Daniel/Scruggs Claim ................................................... 9

IV.     State Farm's Experts Demonstrated the Requisite Individualized Analysis. ....... 10

V.      Arnold's Expert Confirmed the Individualized Review Needed in This Case. ..... 13

ARGUMENT ................................................................................................................ 15

I.      Arnold Has Not Demonstrated Ascertainability. ....................................... 16

II.     Arnold Has Not Demonstrated Predominance. .......................................... 18

        A.      The Legal Framework for Predominance. ...................................... 19

        B.      The Predominating Question Arnold Poses Cannot be Answered for
                Each Putative Class Member Using the Same Evidence. ................. 20

                1.      Initial ACV Payments May Be Sufficient *Despite* "Labor
                        Depreciation." ................................................................... 21

                2.      Whether Policyholders Who Received Full Replacement Cost
                        Benefits Can Recover on a Stand-Alone Claim for
                        Prejudgment Interest Depends on "Fact-Intensive" Questions
                        Unique to Each Policyholder. ............................................. 23

3.	Courts Have Rejected Predominance in Similar Cases. ............... 25

C.	The "Cost to Repair" Cap Further Precludes a Finding of Predominance............................................................................................ 27

1.	The Plain Meaning of the "Cost to Repair" Cap Must Be Enforced. ....................................................................................... 27

2.	Applying the "Cap" Language Here Will Require Extensive Fact-Finding. ................................................................................. 30

D.	Arnold's Class Certification Authorities Are Not Persuasive Here......... 31

III.	Arnold Has Not Demonstrated Superiority............................................................. 34

IV.	Arnold Has Not Demonstrated Adequacy . .......................................................... 37

CONCLUSION................................................................................................................. 40

# TABLE OF AUTHORITIES

## CASES

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
  925 F.3d 1205 (11th Cir. 2019) ............................................................... 17

*Ala. Farm Bureau Mut. Cas. Ins. Co. v. Williams*,
  530 So. 2d 1371 (Ala. 1988) .................................................................. 24

*Allapattah Servs., Inc. v. Exxon Corp.*,
  333 F.3d 1248 (11th Cir. 2003) ............................................................... 21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................... 35

*Annie P. Arnold*,
  No. 2:18-bk-01919 (Bankr. S.D. Ala. May 14, 2018) ............................... 38

*Bailey v. Cumberland Cas. & Surety Co.*,
  180 F. App'x 862 (11th Cir. 2006) ...................................................... 39, 40

*Barber Auto Sales, Inc. v. United Parcel Serv. Co.*,
  No. CV 06-J-4686-NE, 2009 WL 10688014 (N.D. Ala. Sept. 29, 2009) ................................ 16

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) .................................................................. 19

*Brown v. Electrolux Home Prod., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ........................................................ passim

*Bussey v. Macon Cty. Greyhound Park, Inc.*,
  562 F. App'x 782 (11th Cir. 2014) ........................................................... 16

*Butler v. Sears, Roebuck and Co.*,
  727 F.3d 796 (7th Cir. 2013) .................................................................. 37

*Caruso v. Allstate Ins. Co.*,
  No. 06-2613, 2007 WL 2265100 (E.D. La. Aug. 3, 2007) ......................... 27

*CE Design Ltd. v. King Architectural Metals, Inc.*,
  637 F.3d 721 (7th Cir. 2011) .............................................................. 37, 38

*Clopton v. Budget Rent A Car Corp.*,
  197 F.R.D. 502 (N.D. Ala. 2000) ............................................................ 20

*Conrad v. Gen. Motors Acceptance Corp.*,
  283 F.R.D. 326 (N.D. Tex. 2012) ............................................................ 27

*Cook v. Trinity Universal Ins. Co. of Kansas*,
   No. 7:06-CV-02029-LSC, 2007 WL 9717431 (N.D. Ala. Dec. 13, 2007)............................. 38

*Crow v. Nationwide Prop. & Cas. Ins. Co.*,
   No. CV-07-J-1742-NE, 2009 WL 10688889 (N.D. Ala. Feb. 18, 2009) ................................ 18

*Crutchfield v. Sewerage & Water Bd. of New Orleans*,
   No. 13-4801, 2015 WL 3917657 (E.D. La. June 25, 2015) ..................................................... 27

*Farmers Union Mut. Ins. Co. v. Robertson*,
   370 S.W.3d 179 (Ark. 2010)..................................................................................................... 33

*Fisher v. Ciba Specialty Chem. Corp.*,
   238 F.R.D. 273 (S.D. Ala. 2006) ...................................................................................... 16, 39

*Gene & Gene LLC v. BioPay LLC*,
   541 F.3d 318 (5th Cir. 2008) .................................................................................................... 31

*Great Am. Ins. Co. v. R.R. Furniture Salvage of Mobile, Inc.*,
   162 So. 2d 488 (Ala. 1964)....................................................................................................... 28

*Green v. Am. Modern Home Ins. Co.*,
   No. 16-8016 (8th Cir. Sept. 29, 2016) ..................................................................................... 34

*Green v. Am. Modern Home Ins. Co.*,
   No. 4:14-CV- 4074, 2017 WL 2389709 (W.D. Ark. June 1, 2017) ......................................... 34

*Green v. American Modern Home Insurance Company*,
   No. 4:14-04074 (W.D. Ark. Aug. 24, 2016) ............................................................................ 34

*Hicks v. State Farm Fire & Cas. Co.*,
   No. 14-CV-0053-HRW, 2019 WL 846044 (E.D. Ky. Feb. 21, 2019)................... 16, 21, 31, 32

*Hilley v. Allstate Ins. Co.*,
   562 So. 2d 184 (Ala. 1990)....................................................................................................... 30

*In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*,
   321 F.R.D. 430 (N.D. Ga. 2017)......................................................................................... 19, 36

*In re Dial Complete Mktg. & Sales Practices Litig.*,
   312 F.R.D. 36 (D.N.H. 2015) ................................................................................................... 38

*In re Monumental Life Insurance Company*,
   365 F.3d 408 (5th Cir. 2004) .................................................................................................... 33

*In re State Farm Fire and Casualty Co.*,
   872 F.3d 567 (8th Cir. 2017) ................................................................................. 25, 31, 32, 34

*Jones v. Government Employees Insurance Co.*,
No. 6:17-CV-891, 2019 WL 1490703 (M.D. Fla. April 4, 2019) ........................................... 33

*Karhu v. Vital Pharma., Inc.*,
621 F. App'x 945 (11th Cir. 2015) ........................................................................................... 16

*Kartman v. State Farm Mutual Automotive Insurance Co.*,
634 F.3d 883 (7th Cir. 2011) ................................................................................................... 27

*Kirkpatrick v. J.C. Bradford & Co.*,
827 F.2d 718 (11th Cir. 1987) ........................................................................................... 37, 38

*Klay v. Humana, Inc.*,
382 F.3d 1241 (11th Cir. 2004) ......................................................................................... 20, 33

*Koch v. State Farm Fire and Casualty Co.*,
565 So. 2d 226 (Ala. 1990) ..................................................................................................... 28

*Krukever v. TD Ameritrade, Futures and Forex LLC*,
328 F.R.D. 649 (S.D. Fla. 2018) ............................................................................................. 36

*Legacy Condominiums, Inc. v. Landmark American Insurance Co.*,
No. 1:06-CV-1108-KS-MTP, 2008 WL 80373 (S.D. Miss. Jan. 4, 2008) .............................. 29

Lincoln Fountain Villas Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.,
39 Cal. Rptr. 3d 345 (Cal. Ct. App. 2006) .............................................................................. 29

*Lindquist v. Farmers Insurance Co. of Arizona*,
No. CV 06-597-TUC-FRZ, 2008 WL 343299 (D. Ariz. Feb. 6, 2008) ................................... 26

*Madison Cty. Sheriff's Posse, Inc. v. Horseman's United Ass'n*,
434 So. 2d 1387 (Ala. 1983) ................................................................................................... 27

Matthews v. State Farm Fire & Cas. Co.,
No. 06-4758, 2007 WL 2127581 (E.D. La. July 24, 2007) ..................................................... 29

*McCain v. Baldwin Mut. Ins. Co.*,
No. 2010-901266 (Montgomery Cty., Ala., Oct. 18, 2016) .................................................... 33

*McLaughlin v. Fire Ins. Exch.*,
No. 1316-CV-11140 (Jackson City, Mo. July 12, 2017) ......................................................... 33

*Mills v. Foremost Ins. Co.*,
269 F.R.D. 663 (M.D. Fla. 2010) ....................................................................................... 20, 26

*Mills v. Foremost Insurance Co. of Arizona*,
511 F.3d 1300 (11th Cir. 2008) ......................................................................................... 26, 29

*Mitchell v. State Farm Fire & Cas. Co.*,
 327 F.R.D. 552 (N.D. Miss. 2018) ...................................................................... 16, 21, 31, 32

*Moore v. Walter Coke, Inc.*,
 294 F.R.D. 620 (N.D. Ala. 2013) ...................................................................... 16, 20

*National Security Fire and Casualty Co. v. DeWitt*,
 85 So.3d 355 (Ala. 2011).................................................................................... 25, 26, 36

*Nationwide Mut. Ins. Co. v. Nall's Newton Tire*,
 No. CV 14-110-CG-M, 2015 WL 8207478 (S.D. Ala. Dec. 7, 2015).................................... 24

*Nguyen v. St. Paul Travelers Insurance Co.*,
 No. 06-4130, 2008 WL 4691685 (E.D. La. Oct. 22, 2008).............................................. 26, 27

*Pando v. U.S. Fid. & Guar. Co.*,
 No. 97-2978-CIV, 1998 WL 708619 (S.D. Fla. June 29, 1998)............................................ 24

*Pando v. U.S. Fid.*,
 198 F.3d 262 (11th Cir. 1999) .............................................................................. 24

*Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*,
 129 F. App'x 955 (6th Cir. 2005) ............................................................................. 29

*Rader v. Teva Parenteral Medss, Inc.*,
 276 F.R.D. 524 (D. Nev. 2011) ............................................................................... 38

*Rolo v. City Investing Co. Liqudating Trust*,
 155 F.3d 644 (3d Cir. 1998) ................................................................................... 39

*Roper v. Consurve, Inc.*,
 578 F.2d 1106 (5th Cir. 1978) ................................................................................ 34

*Roth v. GEICO General Insurance Company*
 No. 0:16-cv-62942 (S.D. Fla. Sept. 19, 2018) .......................................................... 35

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
 211 F.3d 1228 (11th Cir. 2000) ............................................................................... 20

*Salesin v. State Farm Fire & Cas. Co.*,
 No. 239221, 2003 WL 22299828 (Mich. Ct. App. Oct. 7, 2003)............................................ 30

*Salesin v. State Farm Fire & Casualty Company*,
 581 N.W.2d 781 (Mich. Ct. App. 1998) ..................................................................... 30

*Schafer v. State Farm Fire & Cas. Co.*,
 No. 06-8262, 2009 WL 2391238 (E.D. La. Aug. 3, 2009)................................................... 27

*Shelter Mut. Ins. Co. v. Goodner*,
    477 S.W.3d 512 (Ark. 2015) ................................................................. 32

*Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*,
    490 F. App'x 871 (9th Cir. 2012) ........................................................ 23

*Slade v. Progressive Security Insurance Co.*,
    856 F.3d 408 (5th Cir. 2017) ........................................................ 32, 33

*Slater v. U.S. Steel Corp.*,
    871 F.3d 1174 (11th Cir. 2017) ........................................................... 38

*Smith v. Triad of Alabama, LLC*,
    No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) ................. 16, 20, 37

*Smith v. U.S. Bank, N.A.*,
    No. 1:16-CV-21146-UU, 2017 WL 698530 (S.D. Fla. Feb. 22, 2017) .................... 20

State Farm Fire & Cas. Co. v. Patrick,
    647 So. 2d 983 (Fla. Dist. Ct. App. 1994) ............................................ 29

*State Farm Fire & Cas. Co. v. Williams*,
    926 So. 2d 1008 (Ala. 2005) ........................................................ 18, 22

*Steinberg v. Nationwide Mutual Insurance Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ......................................................... 33

*Stiers v. State Farm Ins.*,
    No. 3:11-CV-437, 2012 WL 2405982 (E.D. Tenn. June 25, 2012) .......................... 29

*Strawser v. Strange*,
    307 F.R.D. 604 (S.D. Ala. 2015) ....................................................... 20

*Stuart v. State Farm Fire & Cas. Co.*,
    910 F.3d 371 (8th Cir. 2018) .................................................... 30, 31, 32

*Telectronics Pacing Systems, Inc.*,
    172 F.R.D. 271 (S.D. Ohio 1997) ....................................................... 39

*Tritschler v. Allstate Ins. Co.*,
    144 P.3d 519 (Ariz. Ct. App. 2006) .................................................... 29

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ................................................................ 34

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................... 19, 31, 35

*Weidman v. Erie Insurance Grp.*,
   745 N.E.2d 292 (Ind. Ct. App. 2001) ............................................................ 28, 29

*Williams v. Mohawk Indus., Inc.*,
   568 F.3d 1350 (11th Cir. 2009) ............................................................................ 20

*Wood v. Cent. Bank of the South*,
   435 So. 2d 1287 (Ala. Civ. App. 1982) ................................................................ 24

*Young v. Nationwide Mutual Insurance Company*,
   693 F.3d 532 (6th Cir. 2012) ................................................................................ 33

**RULES AND STATUTES**

ALA. CODE § 8-8-8 ........................................................................................... 23, 24

ARK. CODE § 23-88-106 (2017) ............................................................................ 32

Fed. R. Civ. P. 23 ...................................................................................... passim

Fed. R. Civ. P. 23(a) ............................................................................................. 39

Fed. R. Civ. P. 23(a)(3) ........................................................................................ 39

Fed. R. Civ. P. 23(a)(4) .................................................................................... 37, 39

Fed. R. Civ. P. 23(b)(3) ........................................................................ 1, 19, 20, 31

Fed. R. Civ. P. 23(d) ............................................................................................. 39

Fed. R. Civ. P. 23(f) ...................................................................................... 31, 32, 34

## INTRODUCTION

Plaintiff Annie Arnold's asserted class action challenges the sufficiency of State Farm's actual cash value ("ACV") payments for Alabama structural damage insurance claims. Compl., PageID.13-14, 18, 23-24 at ¶¶ 1-6, 24-25, 52-56. She alleges that when State Farm calculates ACV as estimated replacement cost less depreciation, it should apply depreciation only to the material component of the estimated replacement cost, and not to the labor component,[1] unless the insurance policy explicitly provides for labor depreciation. *Id.*, PageID.14, 18, 24 at ¶¶ 5, 25, 53; *see also* Pl. Mot., PageID.1126.

Arnold seeks certification under Rule 23(b)(3) of a class of Alabama policyholders allegedly injured by State Farm's ACV calculation method. Pl. Mot., PageID.1126. She has not met her burden to support certification. Ascertainability fails because identifying class members requires individualized fact-finding. Predominance and superiority fail because liability and damages cannot be established through common proofs, but rather require individualized proof and analysis of claim-related documentation for thousands of potential class members. Moreover, Arnold is not an adequate class representative because, *inter alia*, she recovered full replacement cost, including any labor previously depreciated. Her motion should be denied.

## BACKGROUND

### I. Arnold's Proposed Class Definition.

The asserted class includes State Farm's Alabama policyholders who made structural damage claims for losses occurring between March 8, 2011 and August 3, 2017, and who

> [received] an actual cash value payment during the class period from which "non-material depreciation" was withheld from the policyholder; or . . . should have

---

[1] While Arnold's Complaint addressed only depreciation of the "labor" component of replacement cost, her Class Motion challenges depreciation of all "non-material" components. *Compare* Compl., PageID.14, 18 at ¶¶ 5, 25 *with* Pl. Mot., PageID.1126. This brief refers to the challenged depreciation as "labor depreciation."

[received] an actual cash value payment but for the withholding of "non-material depreciation" causing the loss to drop below the applicable deductible.

*Id.*   The proposed class excludes policyholders whose initial ACV payment exhausted the applicable coverage limit.   *Id.*

## II.   The Policy Forms Applicable to the Putative Class Claims Are Not Identical.

Although Arnold is insured only under State Farm's Homeowners ("HO") policy form, the asserted class includes individuals insured under various structural damage policy forms, including Manufactured Home ("MH"), Rental Dwelling, and others.   *Id.*   Arnold has provided the Court with excerpted copies of these policy forms, which she describes as "standard-form insurance policies."   Summary of Loss Settlement Provisions, PageID.1394-1406; Pl. Br., PageID.1140 n.3; *see also* full-length policy forms, PageID.1407-1698.   That characterization is inaccurate, for the policies' respective loss settlement provisions differ materially.   *See infra* at 20-21 n.26.

Arnold's HO policy provides replacement cost coverage (as opposed to just ACV coverage, like the MH policy and some other policies) for structural damage claims.   *Compare* HO Policy, PageID.40 *with* MH Policy, PageID.1717.   Replacement cost coverage means that *if* the policyholder completes repairs, they may recover the full, reasonable cost to repair the damaged property even if that cost exceeds the depreciated value of the damaged property at the time of loss.   Explanation of Building Replacement Cost Benefits, PageID.7650.   The HO policy provides for payment of "the cost to repair or replace" damaged property, in two steps: (1) before repair, State Farm will pay the ACV of the damaged parts of a structure,[2] and (2) after repairs, State Farm will pay replacement cost benefits for the additional, reasonable costs incurred for loss-related

---

[2] Although the HO Policy does not require payment of replacement costs until repairs are completed, State Farm nonetheless often pays those costs upfront where there is a signed  repair contract or repairs are substantially underway. Burney Decl., PageID.7639 at ¶ 6.

repairs.  State Farm never owes more than the policyholder's actual cost to repair (or the policy

limit, if lower):

1. **A1- Replacement Cost Loss Settlement – Similar Construction**

a. We will pay the cost to repair or replace with similar construction and for the same use . . . , the damaged part of the property . . . , subject to the following:

(1)  until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2)  when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

HO Policy, PageID.40 (highlighted emphases added).  Determining whether State Farm breached

these terms – at either the ACV or replacement cost stage – requires evidence of the policyholder's

actual repair costs.  As explained below, State Farm often does not have records of policyholders'

actual repair costs unless they submit a claim for replacement cost benefits ("RCBs").

Although Arnold is the only plaintiff, her motion requests the appointment of three

additional class representatives: Bobby Abney, Tina Daniel and Kenneth Scruggs (Daniel's

spouse).  *See infra* at 9 & n.4.  Abney had an HO policy, but Daniel and Scruggs had a MH policy.

Pl. Br., PageID.1139-1140.  The MH policy does not provide replacement cost benefits, but instead

provides that structural damage claims are "settled at actual cash value at the time of loss.  This

means there may be deduction for depreciation."  MH Policy, PageID.1717.  It also expressly caps

State Farm's ACV payment obligation at the actual cost of repair:

We will pay the lower of:

1. the actual cash value at the time of the loss of the damaged part of the property;

2. the amount necessary to repair or replace;

3. any limit of liability described in the policy; or

4. any applicable Coverage A limit of liability.

*Id.* (highlighted emphases supplied).

Both the HO and MH policies require the insured to submit a "signed, sworn proof of loss" within 60 days after the loss, detailing a "specification[] of any damaged building and detailed estimates for repair of the damage." HO Policy, PageID.42; MH Policy, PageID.1719. Moreover, if State Farm and the insured cannot resolve a dispute over the amount of a covered loss, the insured (or State Farm) can demand binding appraisal. HO Policy, PageID.43; MH Policy, PageID.1719. A covered loss is "payable 60 days" after State Farm receives a proof of loss *and* there is either agreement with the policyholder, an entry of a final judgment, or the filing of an appraisal award in respect to the claim. HO Policy, PageID.43; MH Policy, PageID.1720. All of these policy provisions are implicated by Plaintiff's class certification motion.

## III.   State Farm's Estimating, Claim Handling, and Payment Practices in Alabama.

Arnold's claim is premised on a policyholder's receipt of an ACV payment where depreciation was applied to estimated labor costs. But the evidence here establishes two facts that undermine any attempt at class-wide adjudication: (1) State Farm's ACV payments are based on *estimates* of repair costs; and (2) claims often proceed differently than originally estimated.

### A.   ACV Payments Are Based on *Estimates* of the Cost to Repair the Damage.

When a policyholder makes a structural damage claim, a State Farm adjuster generally inspects the damaged property and prepares an estimate of what it might cost to repair or replace the damage. Burney Decl., PageID.7641 at ¶ 11. State Farm estimates replacement cost as a courtesy to speed up the claim process. *Id.* at ¶ 10. The adjuster observes the damage, takes measurements, and assesses the age and condition of the damaged property and the grade of materials. *Id.* at ¶¶ 11-12. The adjuster then prepares a replacement cost estimate using Xactimate estimating software, which State Farm licenses from Xactware Solutions, Inc. ("Xactware"). *Id.* at ¶ 11. The adjuster enters each anticipated repair task (including type and grade of materials), the

quantity (*e.g.,* square feet), and age and condition of the corresponding damaged property. *Id.*, PageID.7641-7642 at ¶¶ 12-13; *see also* Arnold Estimate, PageID.382-436.

Xactimate supplies a unit price for each line item, based on locally applicable price lists researched by Xactware. Burney Decl., PageID.7641 at ¶ 12. These unit prices are themselves estimates, developed from a "range of cost" for particular repairs in the area. Berryman Rpt., PageID.7659. Contractors may charge higher or lower prices than those shown in Xactimate. *Id*. Xactimate calculates and totals the estimated replacement cost ("RC") for each repair by multiplying the unit cost by the quantity. Albright Rpt., PageID.7711. It then subtracts depreciation – applied to the entire unit cost (per State Farm's settings in Alabama during the relevant period) – based on the age and condition information entered by adjuster (on a line-by-line basis[3]) to arrive at the estimated ACV. Burney Decl., PageID.7641-7642, 7648 at ¶¶ 13, 29.

The ACV and RC figures reflected on an Xactimate estimate do not define State Farm's contractual obligations. State Farm's estimates cannot precisely predict ACV of the damaged structure because it is based on the estimated RC figure. Berryman Rpt., PageID.7656-7657. According to State Farm's general contractor expert, Mike Berryman, Xactimate provides "a reasonable approximation of the probable costs" of repair, but it is imprecise because "there is no single or 'right' work scope or estimate total." *Id.*, PageID.7656. Estimates often vary from actual construction costs because of variations in measurements, work scope, material grade, and pricing, inherent in construction. *Id.*, PageID.7657-7661. The claim file sampling produced in this case confirms that actual repair costs often vary from estimated repair costs. *See infra* at 11-12. Thus, while the ACV estimate is "a good starting point," it generally is not a precise measure of the ACV

---

[3] For example, an adjuster may apply 50% depreciation for a damaged roof that is half-way through its useful life, while applying no depreciation for damage to new kitchen cabinets. *See* Burney Decl., PageID.7641 at ¶ 13.

of a damaged structure.  Berryman Rpt., PageID.7656.  Because ACV is calculated as RC less depreciation, evidence of ***actual*** repair costs allows for a more accurate determination of ACV. *Id.*, PageID.7661.

### B.    Claims Often Proceed Differently Than Originally Estimated.

Although State Farm generally *prepares* an initial estimate for a damaged structure using Xactimate, its claim payment to the policyholder may not be *based* on that estimate.  For example, if the policyholder submits a signed repair contract, State Farm may issue an up-front replacement cost payment without any depreciation applied.  Burney Decl., PageID.7639 at ¶ 6; Albright Rpt., PageID.7722. State Farm may also adjust the ACV amount before issuing a payment to account for prior claim payments or coverage issues that impact State Farm's payment obligation.  Albright Rpt., PageID.7738.  Thus, the mere existence of an Xactimate estimate reflecting an estimated ACV with labor depreciation applied is not indicative of whether State Farm actually *paid* the claim based on that or any other estimate, or whether it even paid estimated ACV as opposed to up front RCBs.  *See id.*, PageID.7722; Burney Decl., PageID.7644-7645 at ¶¶ 21-23.

Moreover, when State Farm issues an initial ACV payment, subsequent claim handling often impacts the value of the policyholder's loss.  A policyholder may submit invoices for actual repairs to claim RCBs, and State Farm may or may not update the Xactimate estimate to reflect the actual repair cost figures before issuing a replacement cost payment.  Burney Decl., PageID.7643-7644 at ¶ 18. When a policyholder submits documentation of repair costs that are higher than the policyholder's ACV payments, State Farm issues a supplemental payment for the amount of those incurred costs less prior payments; thus, the policyholder in the end receives their actual repair costs (less deductible) and there are no remaining depreciated labor costs. *Id.*  When a policyholder submits documented repair costs that are lower than their prior claim payments,

State Farm does not make a supplemental payment. *Id.*, PageID.7640-7641 at ¶ 9; Albright Rpt., PageID.7741-7743.

Generally, whenever a policyholder's *actual* repair costs become known, State Farm relies on those actual repair costs rather than any prior estimate of repair costs. Albright Rpt., PageID.7739-7746. However, for policyholders who do not claim RCBs (and only receive an ACV payment), State Farm generally does not have records reflecting the repairs performed and the cost of those repairs. Burney Decl., PageID.7646 at ¶ 26. That does not mean that the policyholder did not perform repairs, but rather only that State Farm's records do not contain that information. *Id.* Information regarding these policyholders' actual repair costs, necessary to evaluate the sufficiency of State Farm's claim payment(s) under the policy language quoted above, can be obtained only through individualized discovery of policyholders and their contractors and/or inspection of policyholders' properties. Albright Rpt., PageID.7729-7730.

In sum, initial estimates of RC and ACV, though potentially *relevant* to each claim, often do not provide information about how the policyholder's claim was actually settled and how State Farm's estimated ACV payments related to the policyholder's actual repair costs.

### C.  Plaintiff Arnold's Individual Claim.

Arnold's claim was paid in full under her HO policy. Her home was damaged in a fire in June of 2013. Arnold Dep., PageID.7760 at 9:8-15; Arnold Estimate, PageID.385. A State Farm adjuster inspected the home twice and prepared an Xactimate estimate that included more than 300 line-item repairs. Pierce Decl., PageID.378-379 at ¶ 7. He estimated a replacement cost of $95,719.54, depreciation of $21,486.26, and an ACV of $72,233.28 (after applying Arnold's $2,000 deductible). *Id.*, PageID.379 at ¶ 8; Arnold Estimate, PageID.385. State Farm issued an ACV payment based on the Xactimate estimate. Payment Summary, PageID.438; Claim File History, PageID.459. The adjuster explained to Arnold that she could recover RCBs if she incurred

additional costs to repair her home, but that State Farm would not pay more than her actual repair costs.  July 3, 2013 Letter, PageID.1241; Arnold Dep., PageID.7763-7764 at 73:10-74:5.

Instead of repairing her home, Arnold paid off her mortgage and used the remainder of her ACV payment to purchase a "replacement" home: a duplex in need of substantial repairs.  Arnold Dep., PageID.7761-7762 at 12:9-13:19, 15:8-17:22.  She submitted repair records for those repairs, and (long before she filed suit) State Farm paid her RCBs.  Pierce Decl., PageID.380 at ¶ 13; Payment Summary, PageID.438.  Arnold concedes that State Farm paid her all of the labor depreciation applied on her initial ACV payment.  PageID.1139.  Because she did not submit a proof of loss for her claim, State Farm did not know that she disputed any amount of her ACV payment until she filed suit.  Pierce Decl., PageID.381 at ¶ 16.  Neither she nor her expert has identified any amount of damages or "interest" allegedly owing on her claim.  Pl. Br., PageID.1139; Johnson Rpt., PageID.7450-7481.

State Farm also learned through discovery that Arnold misrepresented material facts in her claim.  To support her claim for RCBs, Arnold submitted a signed contract with Metro Mason General Contractors reflecting that they would complete repairs for $49,704.  Arnold Dep., PageID.7765-7766 at 139:22-141:22, 164:17-165:16.  In fact, however, State Farm learned through discovery that Arnold never actually hired Metro Mason to perform repairs and did not pay them any of the $49,704 she claimed she would.  *See id.* at 140:15-141:14, 162:22-163:13. Despite this fact, Arnold received $92,594.00 in payments from State Farm.  *See* Payment Summary, PageID.438; Claim File History, PageID.478; *see also* Pl's Responses to State Farm's First Set of Requests for Admission, PageID.7769.

D.   **The Non-Party Proposed Representatives.**

Arnold's counsel has sought through the class certification motion to add Abney, Daniel and Scruggs as class representatives.  However, the Court's September 28, 2017 order prohibited

any "further joinder of parties or amendment of pleadings" absent "consent of the opposing party or leave of Court."  PageID.964 at ¶ 4.[4]

      1.    <u>The Abney Claim</u>

Abney submitted a claim for fire damage under his HO policy.  Abney Estimate, PageID.1351.  He received an initial ACV payment of $74,985.89, calculated based on an estimated replacement cost of $106,189.98, less depreciation of $30,204.09 and his $1,000 deductible.[5]  *Id*.  Rather than seek RCBs, however, he paid off his mortgage and purchased a manufactured home as a "replacement home" to be free of debt.  Abney Dep., PageID.1302, 1310 at 62:3-63:5, 95:10-15.  At the time of the fire, Abney had invested approximately $56,000 to purchase and repair his property, while he received over $20,000 more than that in claim payments from State Farm.  *Id*., PageID.1315 at 115:23-117:10.

Abney never submitted a proof of loss and had no complaints regarding his claim until Arnold's counsel contacted him.  *Id.*, PageID.1316 at 120:8-121:17, 143:14-21.

      2.    <u>The Daniel/Scruggs Claim</u>

Daniel and Scruggs submitted a claim under their MH policy for alleged storm damage to their manufactured home in March of 2015.  Daniel Estimate, PageID.7792.  After inspecting the property, State Farm issued an ACV payment of $3,020.12, calculated using an estimated replacement cost of $9,062.32, less depreciation and the $1,000 deductible.  *Id.*

---

[4] Nearly two years after Arnold  filed suit and without seeking leave of Court or State Farm's consent, Arnold supplemented her Rule 26(a)(1) disclosures to identify Abney, Daniel, and Scruggs as individuals who she "may move to have . . . appointed as additional class representatives."  Pl.'s Supp. Rule 26(a)(1) Disclosures, PageID.7775-7776; PageID.1060-1061 (granting motion to extend by 180 days the "remaining deadlines" in the scheduling order).

[5] Notably, the adjuster applied no more than 80% depreciation to the damaged property, though much of the property had outlived 80% of its useful life.  *See* Abney Estimate, PageID.1353-1378.

Daniel admitted that she provided false documents to State Farm in discovery regarding their costs to complete repairs – a fictional receipt her contractor prepared in 2019 to show what he "normally charges" for similar repairs.  Daniel Dep., PageID.7784-7786 at 86:23-88:13, 109:7-110:1; Handwritten Statement, PageID.7803.  Both Daniel and Scruggs admitted that they do not know what they actually paid for the repairs.  Daniel Dep., PageID.7785-7786 at 109:7-111:8; Scruggs Dep., PageID.7808-7809 at 35:1-37:16, 39:3-24.

State Farm overstated the estimated costs to repair the Daniel/Scruggs' damaged property by including in its repair cost estimate replacement of an allegedly storm-damaged carpet.  Daniel Estimate, PageID.7794.  In discovery, however, Berryman inspected the home and found that the carpet was *not* damaged by storm water, but rather was "badly aged" and suffered from "noticeable signs of heavy wear and use," (Berryman Supp. Rpt., PageID.7823) – a point Daniel admits she cannot contest.[6]  As a result, Berryman concluded that State Farm's RCV estimate was overstated by at least $2,261.81, and its associated ACV payment thus would have been overstated by at least $581.08.  *Id.*, PageID.7825.  Like Abney, Daniel and Scruggs did not submit a proof of loss and did not previously complain about labor depreciation. Daniel Dep., PageID.7783, 7787-7789 at 24:11-15, 134:6-135:15, 145:10-146:3; Scruggs Dep, PageID.7809-7811 at 40:11-19, 45:18-20, 46:15-47:12.

**IV.   State Farm's Experts Demonstrated the Requisite Individualized Analysis.**

In discovery, State Farm produced a multi-tabbed Excel spreadsheet (the "Combined Report")[7] that combines estimating data for State Farm's Alabama claims (stored by Xactware) with claim payment data (stored within State Farm's Enterprise Claims System ("ECS")).  The

---

[6] *See* Daniel Dep., PageID.7786 at 119:6-25 (conceding she would defer to an expert).

[7] Pl. Mot, Ex. H (SFARNOLD00025815PROD), filed under seal at Dkts. 90-1 – 90-5.

Combined Report identifies approximately 54,000 Alabama claims for which the last-uploaded Xactimate estimate reflected that depreciation had been applied to labor costs shown on the estimate.[8]  However, as explained above, the fact that an estimate reflects labor depreciation does not necessarily mean that State Farm made an ACV payment with labor depreciation applied.

State Farm's accounting expert, Heather Albright, analyzed a randomly selected sampling of 155 claim files that State Farm produced from among the claims appearing on the Combined Report and determined that the Combined Report does not reliably identify:

(a)     Who received an ACV payment;

(b)     How much labor depreciation was applied on any such ACV payment;

(c)     Who received a payment of policy limits;

(d)     Who completed repairs and at what cost; or

(e)     Whether any ACV payment overstated the true ACV of the damaged property. [9]

*See* Albright Rpt., PageID.7702-7704.  For example, she found that although each claim on the Combined Report had an Xactimate estimate reflecting labor depreciation, some policyholders in fact were paid full replacement costs up-front, without depreciation.  *Id.*, PageID.7722.  And more than one-third of the policyholders recovered replacement cost benefits for at least some repairs. *Id*.  Still others were able to complete repairs to some or even all of the damaged property using *only* their ACV payment.  *Id.*, PageID.7741-7743.  And when actual repair costs were available, Albright found that they frequently differed from estimated costs.  *Id.*, PageID.7744-7745.

Albright demonstrated that individualized review would be required to determine which

---

[8] This figure excludes claims with a date of loss outside the asserted class period and claims under a policy with Endorsement FE-3650, per the asserted class definition.  *See* Albright Rpt., PageID.7704 n.10; Pl. Mot., PageID.1126.

[9]  State Farm does not electronically track the listed data points.  *See* Vinciguerra Decl., PageID.7851-7852 at ¶¶ 6-7.  Xactware data and ECS data are collected in accordance with Xactware's and State Farm's respective business needs, not to provide calculation of alleged damages in litigation.  *See id.*, PageID.7852-7853 at ¶¶ 9-10.

policyholders (a) received an ACV payment with labor depreciation applied, (b) received a payment of the applicable policy limit, (c) recovered any RCBs, or (d) completed repairs to all or part of the damaged property using their initial ACV payment. *Id.*, PageID.7739-7749 (Examples 1-5). Albright also found that State Farm often does not have records of policyholders' actual repair costs unless they seek replacement costs benefits. *Id.*, PageID.7743.[10]

Berryman explained that it is not possible to review an estimate on its face to determine if the estimated ACV figure was, in fact, higher or lower than the true ACV of the damaged property, but rather that it is necessary to individually assess each loss – including with an inspection. Berryman Rpt., PageID.7663-7668. And he opined that estimates of repair costs often vary from actual repair costs. *Id.*, PageID.7664. Berryman even identified several files from State Farm's claim-file sampling where the policyholder's actual repair costs were less than State Farm's ACV payments.[11] Berryman opined that ACV payments are usually sufficient for a contractor to begin repairs to the damaged property – because contractors often collect the balance of the contract when the insurance company pays RCBs. *Id.*, PageID.7668-7669. Thus, it is not necessary for a policyholder to pay money out-of-pocket to complete repairs, and the amount of depreciation (and of the ACV payment) has no impact on the insured's ability to complete repairs. *See id.*

---

[10] Albright's review of the sample claim files (which averaged 320 pages) took 25 minutes per file, even though it did not include the steps Arnold's expert, Toby Johnson, plans to use to determine "withheld" labor depreciation, relevant "dates of withholding," and calculate damages and interest. Albright Rpt., PageID.7720; *see also* discussion *infra* at 13-15. At that rate, it would take approximately *23,000 hours* to review all 54,000 potential class claims – or, more than *five years* for a single person working 12 hours per day, seven days per week. *See* Albright Rpt., PageID.7720.

[11] For example, he identified a claim where State Farm's estimated replacement cost for certain repairs was $2,334.32 and the estimated ACV was $2,095.84, but the insured's contractor finished the repairs for only $1,090. Berryman Rpt., PageID.7673-7676. In another claim, the insured paid $7,942.32 for repairs, but the estimated ACV for those repairs was $8,292.32. *Id.*, PageID.7676-7678.

Finally, economist Stephen Prowse opined that in light of the aforementioned individualized issues, the fact of economic injury and the amount of damages (if any) cannot be determined for potential class members by generalized proof.  Prowse Rpt., PageID.7842 at ¶ 13. Instead, determining whether labor depreciation economically harmed any policyholder will require an examination of the specific facts and circumstances related to that policyholder's claim. *Id.*, PageID.7842-7843 at ¶¶ 13-15, 25.  Prowse explained that an ACV payment that is lower than it otherwise would be because of labor depreciation cannot be equated with economic injury because the ACV amount is based on an *estimate* of future costs (based on average pricing), while insureds often can (and do) complete repairs for a lower amount.  *Id.*, PageID.7851-7852 at ¶ 26. Prowse highlighted individualized inquiries that would be needed for Plaintiff to prove whether any insured was economically injured by labor depreciation, including determining: (a) how the initial estimate relates to the necessary repairs and, if repairs were completed, to the actual repair costs; (b) whether any labor depreciation initially applied on one repair item was offset by overpayment as to another; (c) whether an insured actually received an ACV payment with labor depreciation applied; and (d) whether initially applied labor depreciation was addressed through subsequent supplemental payments and the timing of such payments.  *Id.*, PageID.7853-7869 at ¶¶ 29-56.

**V.      Arnold's Expert Confirmed the Individualized Review Needed in This Case.**

Arnold relied on an independent claim adjuster, Johnson, as her sole expert in contending that one can quickly and easily determine class membership and calculate damages and interest (if any) owed to class members.  Johnson's concessions, however, undermine those contentions.

For example, he agreed that an individualized review and analysis of claim files is needed to identify class members and to calculate damages and interest.[12]  Although he initially said he could do so in "2-3 minutes" per claim, he acknowledged that he has not determined class membership or damages for even a *single* claim.  Johnson Dep., PageID.7913 at 251:16-253:12. Moreover, when asked to demonstrate his approach for a relatively simple claim at his deposition, it took him almost 30 minutes to find the amount of still-outstanding non-material depreciation on the claim ($188) (Video of Johnson Dep., filed conventionally as Ex. 13, Excerpt 1), and another three minutes to confirm that no RCBs were paid (*Id.*, Excerpt 2).[13]  Johnson eventually conceded that an average review time of 15-20 minutes per claim was fair as a high-end estimate.  Johnson Dep, PageID.7915 at 275:24-276:16.

Johnson also concedes that he does not plan to (1) review estimates for obvious errors or overstatements, even though he acknowledges that both can result in an overpayment of ACV; (2) update estimates to reflect further claims adjustment activity, even though he acknowledges that his approach requires an updated estimate and that the estimates in some files may not have been

---

[12] Though Johnson originally opined that he could use the Combined Report alone, (Johnson Rpt., PageID.7462 at ¶ 38), he later testified that he would *not* rely solely on that Report.  Johnson Dep., PageID.7910-7912 at 219:1-220:9, 233:20-234:25).  He plans to review all of the estimates and payments for each claim; to calculate the "withheld" labor depreciation for each payment by toggling the depreciation settings in Xactimate for the corresponding estimate; and to determine if any of the labor depreciation was paid back as RCBs.  *Id.*, PageID.7905-7906, 7910-7912 at 180:11-185:24, 219:1-220:9, 233:20-234:25.

[13] Johnson had for this real-time test an electronic, searchable version of the claim file, a printed copy, and a copy of the Combined Report.  Though he says his review would be quicker using ECS, he admits he has never used ECS. Johnson Dep., PageID.7897-7898 at 104:24-107:10.  He also acknowledged that State Farm used ECS to review and evaluate approximately 1,000 open Alabama claim files for potential supplemental payments following the Court's denial of State Farm's motion to dismiss, and that State Farm's review (narrower than the one Johnson plans) took roughly 15-20 minutes per claim to complete.  *See id.*, PageID.7897 at 102:1-19; *see also* O'Toole Decl., PageID.7408, 7410 at ¶¶ 7, 15.

updated;[14] or (3) determine actual repair costs, even though he concedes that if a policyholder completes repairs for the amount of their initial ACV payment, they have no "withheld" labor depreciation. *Id.*, PageID.7893-7894, 7902-7903, 7907-7909 at 28:24-31:7, 169:18-171:5, 201:6-208:9.

Johnson aspires to use the "withheld" labor depreciation amounts and applicable "dates of withholding" (payment dates) to calculate interest, but offers no methodology for doing so and has not calculated interest for a single claim.[15] That is significant, for many policyholders, like Arnold, recovered full replacement costs (including previously depreciated labor).[16]

## ARGUMENT

Arnold bears the burden "of *proof*, not a burden of pleading," to establish Rule 23's prerequisites with admissible evidence. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016). The Court "must conduct a rigorous analysis to determine" whether she has carried that burden. *Id.* (internal citations and quotation marks omitted). That inquiry "frequently entail[s] overlap with the merits of the plaintiff's underlying claim." *Id.* (internal citations and quotation marks omitted). Thus, if a question of fact or law is relevant to the Rule 23 prerequisites, then the Court must "actually decide it and not accept it as true or construe it in anyone's favor." *Id.* Arnold's bid for class certification fails under this standard.

---

[14] Adjusters do not update estimates every time a claim payment is made provided that the basis for that payment can be found in the claim file. Burney Decl., PageID.7645 at ¶ 24.

[15] Rather it was clear that he had not considered the complexities inherent in calculating interest for claims with more than one payment (*see* Video of Johnson Dep., filed conventionally as Ex. 13, Excerpt 3) – of which there are more than 27,000 on the Combined Report. Albright Rpt., PageID.7735.

[16] State Farm disputes that such insureds suffered any injury or have standing.

I.       **Arnold Has Not Demonstrated Ascertainability.**

The Eleventh Circuit applies a "strict ascertainability requirement." *Karhu v. Vital Pharma., Inc.*, 621 F. App'x 945, 949-50 (11th Cir. 2015).  When a plaintiff claims she can identify class members using the defendant's records, she must show that the identification process "will be administratively feasible." *Id.* at 948.  The process should "not require much, if any, individual inquiry." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 788 (11th Cir. 2014) (internal quotation omitted).[17]  Arnold cannot meet this test.[18]

Arnold's proposal to use the Combined Report and claim files to identify class members will require extensive, individualized fact-finding.  For example, the class definition requires receipt of an ACV payment with labor depreciation applied, but there is no data field on the Combined Report with that information; rather the Report only identifies estimates reflecting such depreciation.  Pl. Mot., Ex. H; *supra* at 10-11; Albright Rpt., PageID.7742.  For some claims on the Combined Report, policyholders received up-front payments of replacement cost, not ACV,

---

[17] *See also Fisher v. Ciba Specialty Chem. Corp.*, 238 F.R.D. 273, 301-02 (S.D. Ala. 2006) (class of "income-producing" properties not ascertainable because identifying them would "require individualized fact-finding on a property-by-property basis," a "massive" administrative burden). Arnold relies on *Bussey* (PageID.1148), but the case does not help her, for the court reversed the grant of class certification based on the district court's failure to rigorously analyze the Rule 23 requirements.  *Bussey*, 562 F. App'x at 791.

[18] Notably, Arnold relies extensively on cases outside of the Eleventh Circuit that apply a different test for ascertainability.  *See* PageID.1148-1149 (citing, *e.g.*, *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 560-61 (N.D. Miss. 2018), *appeal docketed*, No. 18-60776 (5th Cir. Nov. 5, 2018); *Hicks v. State Farm Fire & Cas. Co.*, No. 14-CV-0053-HRW, 2019 WL 846044, at *7 (E.D. Ky. Feb. 21, 2019), *appeal docketed*, No. 19-5719 (6th Cir. July 3, 2019)).  Her remaining cases are plainly distinguishable.  *See Moore v. Walter Coke, Inc.*, 294 F.R.D. 620, 624-28 (N.D. Ala. 2013) (denying *motion to dismiss* class allegations, but noting concerns with ascertainability requirement); *Barber Auto Sales, Inc. v. United Parcel Serv. Co.*, No. CV 06-J-4686-NE, 2009 WL 10688014, at *2 (N.D. Ala. Sept. 29, 2009) (database report conclusively identified every single putative class member); *Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *6 (M.D. Ala. Mar. 17, 2017) (list of patients from hospital with missing records adequately identified persons whose data may have been stolen).

including several Albright identified among the sampled claims.  Albright Rpt., PageID.7722-7724.[19]  If the same proportion of these claims existed across the putative class, there could be more than 1,000 claims with up-front payments of replacement cost.  *Id.*  The only way reliably to identify these claims is through a tedious review of the tens of thousands of claims on the Combined Report.  *Id.*

Similarly, Arnold's class definition includes policyholders who "would have" received an ACV payment "but for" State Farm's application of labor depreciation, but there is no way to reliably identify these claims without analyzing each claim file, for there are many reasons having nothing to do with labor depreciation that may explain nonpayment.  *Id.*, PageID.7748-7749 (*e.g.*, damage covered by a prior claim that was never repaired); *see also* Burney Decl. PageID.7645, at ¶24.

Finally, while Arnold's class definition excludes those paid policy limits through an ACV payment,[20] Albright's analysis shows these limits payments cannot reliably be identified using the Combined Report alone.  Albright Rpt., PageID.7724.  Instead, one must review each claim file to determine (1) the applicable limit (e.g., dwelling, dwelling extension); (2) whether it was

---

[19] Although Johnson proposes to use the "draft remarks for each payment" to categorize payments as ACV or RCV (Johnson Rpt., PageID.7452 at ¶ 3), he concedes that approximately 10,000 payments have no "draft remarks" and that many other remark entries are also uninformative as to the nature of the payment (*e.g.*, "COV A").  *See* Johnson Dep., PageID.7903-7904 at 172:10-175; Albright Rpt., PageID.7733.

[20] This exclusion is too narrow.  Under Eleventh Circuit precedent, *all* policyholders who received payment of policy limits should be excluded.  *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019) ("When an insurance company has "paid all benefits in full . . . [t]here is no case or controversy.") (internal quotation marks omitted).  Though the Court denied State Farm's motion to dismiss Arnold's claim on standing grounds, it acknowledged that State Farm's authorities suggested that pre-suit payment of RCBs was sufficient to "negate an injury in fact [and] make it impossible to redress the (already redressed) injury."  PageID.783-784.  The Court also noted that State Farm's pre-suit payment might better be viewed as a question of mootness that also defeats Article III jurisdiction.  PageID.784 & n.4.

exhausted; (3) which payment exhausted it; and (4) whether that payment was for ACV.[21]  *See id.*
Ascertainability fails.

## II.   **Arnold Has Not Demonstrated Predominance.**

Arnold has accused State Farm of paying her (and putative class members) too little for
ACV.  If Arnold brought this suit as an individual action, she would have the burden of proving
that her payment from State Farm was lower than the actual cash value of her damaged property.[22]
She would need to present evidence at trial to establish that value – such as repair estimates and
records and testimony from a contractor or an expert – and State Farm would have the opportunity
to present competing evidence.[23]

While State Farm's initial Xactimate estimate might be one piece of evidence relevant to
value, it is just an estimate based on Xactware's average pricing from a range of possible prices.
The estimate does not define State Farm's contractual obligations; it is not a judicial admission as
to ACV; it is not a sworn damages opinion; it is merely an *estimate* of what it will cost to repair or

---

[21] Albright found a few examples of limits claims in her review of the sample claims (one which
hit limits through an ACV payment), but they could not be identified from the Combined Report
alone.  Albright Rpt., PageID.7724.  Hundreds (or thousands) of these claims could exist across
the putative class.

[22] *See, e.g., State Farm Fire & Cas. Co. v. Williams*, 926 So. 2d 1008, 1016-17 (Ala. 2005)
(reversing judgment for insureds where the insureds "failed to present substantial evidence of an
essential element of their breach-of-contract claim—damages" because they presented no
competent evidence of the cost to repair their damaged property); *Crow v. Nationwide Prop. &
Cas. Ins. Co.*, No. CV-07-J-1742-NE, 2009 WL 10688889, at *3-5 (N.D. Ala. Feb. 18, 2009)
(granting summary judgment to insurer on breach of contract claim where the plaintiffs submitted
no evidence of ACV other than their own affidavits and could not establish that the insurer's ACV
payment was too low).

[23] *See Williams*, 926 So. 2d at 1013-17 (insured trial testimony as to value of home before
"explosion" and estimated costs to repair based on hearsay was insufficient to show repair or
replacement costs); *Crow*, 2009 WL 10688889, at *4-5 (insured presented purported layman's
affidavit of value of house and property, hearsay testimony that no appraisal could be done on a
residence that was a total loss as evidence of actual cash value of their house; all rejected as
insufficient to create a genuine dispute of material fact).

replace damaged property.  The estimate may turn out to be overstated (as actual repair costs could show); it may also have errors.  After hearing all of this evidence, the jury would decide: What was the actual cash value of Arnold's loss, and did State Farm's payment equal or exceed that amount? And, regardless of the answers to those questions, did State Farm ultimately pay Arnold for any initially applied labor depreciation?

Plaintiff's burden to prove that each and every ACV payment at issue in this case was insufficient does not disappear simply because she has sued on behalf of a putative class.  And State Farm still has the due process right to contest each claim that it underpaid ACV.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its . . . defenses to individual claims").  The dispositive individualized factual issues to be resolved for each claim will overwhelm any purported common issues Arnold has identified.

A.    **The Legal Framework for Predominance.**

In assessing whether Arnold has satisfied the predominance requirement under Rule 23(b)(3), the Court "must first identify the parties' claims and defenses and their elements," and then "classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." *Brown*, 817 F.3d at 1234; *accord In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, 321 F.R.D. 430, 442 (N.D. Ga. 2017).  Common questions are those "where the same evidence will suffice for each member . . . ." *Brown*, 817 F.3d at 1234 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

If plaintiffs must "introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, then predominance does not exist." *Atlas Roofing*, 321 F.R.D. at 442; *accord Williams v. Mohawk*

*Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009). That holds true even when a plaintiff purports to sue for breach of "form" contracts.[24]  Arnold's cases are plainly distinguishable.[25]

According to Arnold, her claim "centers on a single, predominating question:  did State Farm breach its standard-form insurance policy by withholding labor depreciation when calculating its insureds' ACV payments?"  PageID.1155.  But State Farm's initial contractual obligation is to pay ACV, not to apply a particular ACV calculation methodology.  The breach question correctly framed is: did State Farm "underpay" each policyholder for ACV?   As demonstrated below, this question cannot possibly be answered using the "same evidence" for each putative class member.  *Brown*, 817 F.3d at 1234.

### B.    The Predominating Question Arnold Poses Cannot be Answered for Each Putative Class Member Using the Same Evidence.

Arnold's predominance analysis assumes that *if* the application of labor depreciation is improper, it always results in a claim underpayment and, thus, a breach of contract.  Not so.[26]

---

[24] *See*, *e.g.*, *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233-35 (11th Cir. 2000) (certification improper where liability and damages issues for claims of breach were case-specific and had to be addressed as part of each class member's *prima facie* case); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262-67 (11th Cir. 2004) (denying certification of claims for breach of allegedly comparable contracts); *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 676 (M.D. Fla. 2010) (denying certification of claims against insurer, noting that "[e]ven the existence of a form contract . . . does not guarantee predominance") (internal quotations omitted); *Smith v. U.S. Bank, N.A.*, No. 1:16-CV-21146-UU, 2017 WL 698530, *14-15 (S.D. Fla. Feb. 22, 2017) (denying certification of contract claims where individualized questions as to the claims *and* defenses would predominate).

[25] Though claims involving "form contracts" *sometimes* may be appropriate for class treatment, Arnold's cases (*see* PageID.1147) are unpersuasive.  Class certification was *denied* in *Clopton v. Budget Rent A Car Corp.*, 197 F.R.D. 502, 510 (N.D. Ala. 2000).  *Strawser v. Strange*, 307 F.R.D. 604 (S.D. Ala. 2015), did not involve a Rule 23(b)(3) class.  In *Moore*, the court merely declined to strike class allegations at the pleading stage.  294 F.R.D. at 627.  And in *Smith*, the court found that questions as the defendant hospital's duty and breach in a case of stolen patient data were overarching common questions that would predominate at trial.  *See* 2017 WL 1044692, at *15. No such predominating common question exists here.

[26] Arnold also frames her predominance arguments as if all class members had insurance policies identical to her HO policy.  *See* PageID.1155.  As shown above, however, the MH and HO Policies differ substantially, including because one provides replacement cost coverage and the other does

-20-

1.   <u>Initial ACV Payments May Be Sufficient *Despite* "Labor Depreciation."</u>

Many who received an ACV payment with labor depreciation applied cannot have been "underpaid" because the estimate that served as the basis for their ACV payment was overstated by more than the amount of any applied labor depreciation.  It would be preposterous to suggest that all Xactimate estimates of replacement costs – which themselves are based on a range of possible prices – are 100% accurate.  Basic math confirms that if a replacement cost estimate is overstated, an ACV payment based on that estimate will also be overstated.  In particular, any change in the "replacement cost" of the "replacement cost less depreciation" formula for ACV will produce a different ACV.  Whether any policyholder *in fact* was "underpaid" for ACV depends on whether State Farm's estimate of replacement cost was overstated and, if so, by how much.  Again, it would be Plaintiff's burden to show any underpayment as to every claim and she has made no showing how she would or could do so here.

The underpayment determination necessarily requires individualized analysis.  As Berryman explained, repair cost estimates can be overstated for many reasons.  *See supra* at 5.  State Farm's claim file sampling provides numerous examples of these overstatements.  On claim 01-8D02-575, for example, the adjuster learned after an initial ACV payment that he had used the wrong grade of flooring, thereby causing the estimate of replacement costs to be $2,300 too high.  Albright Rpt., PageID.7745.  That produced an ACV figure that was overstated by $2,000 – far more than the labor depreciation applied to the ACV payment ($1,187).  *Id.*  Thus, even if labor

---

not.  *See supra* at 2.  And there are still other differences in the pertinent language of other policy forms.  *See* Chart Comparing Loss Settlement Provisions, PageID.7920.  Arnold's cases make clear that it is her burden to *prove* that all of the applicable policies are "materially similar."  *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003).  Yet she offers *no* such analysis.  Accordingly, at a minimum, there can be no class including individuals insured under policy forms other than Arnold's HO policy.  *See Mitchell*, 327 F.R.D. at 559; *Hicks*, 2019 WL 846044, at *8.

depreciation is deemed improper, this policyholder was not "underpaid."

Similarly, for claim 01-6D06-138, State Farm issued an initial ACV payment of $1,095.84. Berryman Rpt., PageID.7673-7674.  According to contractor invoices, however, the policyholder later completed all repairs for just $1,090 – less than half of the estimated replacement cost ($2,334).   State Farm's estimate thus overstated the actual replacement cost, which in turn produced an ACV overstatement of approximately $1,000 – far exceeding the total depreciation applied on the ACV payment ($238.48).   *Id.*, PageID.7674-7675.   Again, there was no "underpayment" of ACV.

These illustrations are not unusual.  Albright's review of the claim file sampling revealed that, for claims where full replacement cost benefits were paid after an initial ACV payment, the actual repair costs were different from the estimated cost nearly a third of the time.  Albright Rpt., PageID.7725.  Moreover, State Farm's claim files often do not contain evidence of the repair costs its policyholders have incurred unless they submit a claim for RCBs.  *See* Burney Decl., PageID.7646 at ¶ 26.  Evidence of actual repair costs instead often is in the sole possession of policyholders (or their contractors).  *See id.* at ¶¶ 25-26.  And as Arnold's claim demonstrates, even repair records submitted by insureds to State Farm may not reflect repair costs *actually* incurred. *See supra* at 8.  Thus, further discovery from class members will be necessary to evaluate the sufficiency of each ACV payment made to each policyholder.  Finally, an ACV payment may be overstated whether or not the policyholder actually completes repairs, and each policyholder must prove that the actual ACV of their damaged property is greater than the payment they received from State Farm.  *Williams*, 926 So.2d at 1016-17 (insured's burden to prove damages

when claiming breach of insurance contract).[27]

In sum, whether a payment of ACV was sufficient depends on more than just the initial estimate prepared by State Farm. State Farm's policy provides for payment of the actual cash value of damaged property, not the number that appears as "ACV" on State Farm's initial estimate, which estimate does not define State Farm's contractual obligation. A "rigorous analysis" of these issues as required under Rule 23 reveals that Arnold has not shown – and cannot show – predominance. *Brown*, 817 F.3d at 1234.

>    2.    Whether Policyholders Who Received Full Replacement Cost Benefits Can Recover on a Stand-Alone Claim for Prejudgment Interest Depends on "Fact-Intensive" Questions Unique to Each Policyholder.

The Court previously held that policyholders like Arnold who recovered all applied labor depreciation through RCBs *before* filing suit nonetheless have standing to assert a claim for prejudgment interest under ALA. CODE § 8-8-8 for the time between the ACV payment and their recovery of RCBs. PageID.784-788. Notably, however, the Court acknowledged several "fact-intensive" questions bearing on each such claim. PageID.784. Those interest-based fact questions require a claim-by-claim file review and, thus, defeat predominance.

First, the jury would need to determine whether each policyholder submitted a proof of loss as required under the policy *and* whether the allegedly "withheld" labor depreciation was still

---

[27] Arnold's expert *agrees* that (i) estimating variations or errors can result in overstatements of ACV, Johnson Dep., PageID.7893-7894 at 28:6-31:7; and (ii) a policyholder whose actual repair costs are well below State Farm's initial estimate may not be entitled to a further payment for ACV based on that estimate, *see id.*, PageID.7908 at 204:1-25. Nevertheless, Arnold's counsel has instructed her expert not to review any estimates for potential overstatements and to look solely to the ACV figure appearing on State Farm's initial estimate to determine ACV – even where actual repair costs are much lower than estimated. *Id.*, PageID.7891 at 8:7-10:24. Yet evidence of actual repair costs *is* "properly included in the calculation of replacement cost, which would then be reduced by the appropriate depreciation to determine the ACV." *Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 490 F. App'x 871, 878 (9th Cir. 2012).

unpaid 60 days later.   Under ALA. CODE § 8-8-8, interest is not owed unless a contractually required payment is overdue, and no payment is "due" under State Farm's policy until 60 days *after* the policyholder submits a proof of loss.[28]  *See Nationwide Mut. Ins. Co. v. Nall's Newton Tire*, No. CV 14-110-CG-M, 2015 WL 8207478, *4 (S.D. Ala. Dec. 7, 2015) (where policy provided for payment after proof of loss occurred, breach occurred when the insured submitted his proof of loss and interest ran from *that* date).[29]  Arnold has not shown that common proof exists to make these determinations. Prowse Rpt., PageID.7873 at ¶ 65.

Second, for pre-judgment interest to be allowed, the jury would need to determine for each claim whether the allegedly withheld amounts were "certain," whether the due date for those amounts was "certain," and whether State Farm knew those facts.  *Wood v. Cent. Bank of the South*, 435 So. 2d 1287, 1291 (Ala. Civ. App. 1982).  Those questions cannot be answered with common proof.  Prowse Rpt., PageID.7873-7876 at ¶¶ 65-69.  Arnold's expert has not *attempted* to calculate damages or interest owed here, even for Arnold's own claim.  *See supra* at 15 & n.15.

---

[28] ALA. CODE § 8-8-8 ("[a]ll contracts, express or implied, for the payment of money, . . . bear interest from the day such money . . . *should have been paid*") (emphasis added). State Farm's policy states that losses are "payable 60 days after we receive your proof of loss" *and* there is agreement as to the amount of the loss, entry of final judgment, or filing of an appraisal award. *See* HO Policy, PageID.43 (Condition No. 8).

[29] *See also Ala. Farm Bureau Mut. Cas. Ins. Co. v. Williams*, 530 So. 2d 1371, 1378 (Ala. 1988) (insurance payment was due 60 days after insured's submission of a proof of loss, not on the date of loss; policy fixed the date from which statutory prejudgment interest would run).  Though Arnold has argued that State Farm waived the proof of loss requirement through its ACV payment, she is wrong.  The policy requires a written waiver, HO Policy, PageID.48, and there can be no waiver of a proof of loss requirement in any event where – as here – the insurer has paid the only claim submitted to date and does not know the policyholder believes she is entitled to a further payment.  *See Pando v. U.S. Fid. & Guar. Co.*, No. 97-2978-CIV, 1998 WL 708619, at *3 (S.D. Fla. June 29, 1998) (holding that no waiver of proof of loss requirement occurs "where the insured . . . accepts payment on a claim and then waits [several] years before submitting *an additional claim*" for further payments ), *aff'd sub nom. Pando v. U.S. Fid.*, 198 F.3d 262 (11th Cir. 1999).

-24-

3. <u>Courts Have Rejected Predominance in Similar Cases.</u>

In *In re State Farm Fire and Casualty Co.*, 872 F.3d 567 (8th Cir. 2017) ( "*LaBrier*"), the Eighth Circuit grappled with the realities of a classwide trial of labor depreciation claims and definitively found predominance lacking. *Id*. at 577. The plaintiff there, like Arnold, challenged State Farm's method for calculating ACV, alleging that by applying labor depreciation, State Farm had breached her HO policy. *Id.* at 570-71. The court rejected that theory and held that predominance could not be satisfied based solely on the *assumption* that labor depreciation always resulted in an underpayment of ACV. *Id*. at 577. In fact, the court noted that State Farm's "replacement cost less depreciation" calculation method may well overstate the actual cash value of aged and deteriorated property in certain cases. *See id.* at 575-77.[30] It recognized that whether any particular payment of ACV was insufficient was a question that would require wholly individualized jury determinations for each property and that, at trial, both parties would be free to present competing property valuation evidence *beyond* State Farm's initial repair cost estimate. *Id.* at 574. The Eighth Circuit accordingly concluded that there were "*no* predominant common facts at issue" in the suit, reversing class certification specifically on that ground. *Id*. at 577.

Similarly, in *National Security Fire and Casualty Co. v. DeWitt*, 85 So.3d 355 (Ala. 2011), the plaintiff alleged that his insurer underpaid him for ACV – thereby breaching his homeowners insurance policy – by not including 20% for general contractor overhead and profit ("GCOP") in its ACV calculation. *Id*. at 357. The Supreme Court of Alabama, however, held that these claims could not be adjudicated on a classwide basis because determining the sufficiency of each payment at trial would involve "presenting evidence regarding thousands of individual claims," including

---

[30] In *LaBrier*, as here, the term ACV was not defined in State Farm's policy. 872 F.3d at 570. Like Alabama, Missouri defined ACV by law, and the Eighth Circuit correctly recognized that the term could *not* be deemed ambiguous under Missouri's rules for contract construction. *Id.* at 573.

evidence related to the affirmative defenses that might exist "against individual insureds." *Id*. at 384. Furthermore, despite the plaintiff's use of a seemingly "mechanical method for calculating the damages," the court found predominance lacking because "an individual review of each claim file would still have to be undertaken to determine the damages . . . ." *Id*.[31]

In *Nguyen v. St. Paul Travelers Insurance Co.*, No. 06-4130, 2008 WL 4691685 (E.D. La. Oct. 22, 2008), the plaintiff made nearly an identical argument to that asserted here to attempt to avoid the intractable individualized inquiries that would predominate at trial. Plaintiff there accepted as accurate all aspects of State Farm estimates except for what he alleged to be a uniformly understated rate for GCOP, which he claimed alone constituted a breach of contract. *Id*. at *5-6. The court disagreed that a discrete element of an estimate – like GCOP there or labor depreciation here – could alone constitute a breach because "[t]he contract provides that State Farm will pay the *total amount* that is reasonably necessary to repair or replace the property" and that as a result "the issue is whether the total amount paid …was sufficient to satisfy State Farm's contractual obligation." *Id*. at *5. The court denied class certification, holding predominance failed because State Farm would be entitled at trial to demonstrate that its overall payment was "contractually sufficient" despite the GCOP deduction, including because the amount of State

---

[31] Arnold ignores *DeWitt*, and instead cites a contrary decision from another jurisdiction, *Lindquist v. Farmers Insurance Co. of Arizona*, No. CV 06-597-TUC-FRZ, 2008 WL 343299 (D. Ariz. Feb. 6, 2008). *DeWitt* is more persuasive. *Lindquist* was decided on a motion to dismiss, not a motion for class certification. 2008 WL 343299, at *1-2. Although *Lindquist* relied on the Eleventh Circuit's decision in *Mills v. Foremost Insurance Co. of Arizona*, 511 F.3d 1300 (11th Cir. 2008), in denying the defendant's motion to dismiss, *Mills* likewise was decided on a motion to dismiss – not after discovery. *See Mills*, 511 F.3d at 1311. Notably, the district court in *Mills* subsequently *denied* class certification after full discovery on remand after concluding that the plaintiffs' claims for alleged underpayment of ACV could not satisfy predominance. *See Mills*, 269 F.R.D. at 667 (recognizing that the insurer would be entitled to defend each policyholder's claim with individualized proof, including proof showing the sufficiency of its *total* claim payment).

Farm's overall ACV estimate was "too high" (*e.g.*, due to overstated prices in Xactimate).  *Id.*[32]

In sum, as the Seventh Circuit recognized in *Kartman v. State Farm Mutual Automotive Insurance Co.*, 634 F.3d 883 (7th Cir. 2011), insurance "entails a promise to pay covered losses, *not* a covenant to use a particular standard for evaluating property damage."  *Id.* at 890 (emphasis added).  Thus, State Farm's use of an allegedly improper method for determining ACV "does not by itself establish liability for breach," because State Farm may have satisfied its contractual obligation *regardless* of its allegedly wrongful practice.  *See id.*

**C.    The "Cost to Repair" Cap Further Precludes a Finding of Predominance.**

    1.    <u>The Plain Meaning of the "Cost to Repair" Cap Must Be Enforced.</u>

State Farm's policies expressly limit each policyholder's recovery – whether for ACV or otherwise – to their total actual cost to repair their damaged property.  *See supra* at 2-3.  The language is unambiguous and must be applied as written.  *See Madison Cty. Sheriff's Posse, Inc. v. Horseman's United Ass'n*, 434 So. 2d 1387, 1389 (Ala. 1983).  It follows that to determine whether any policyholder's ACV payment breached the policy, the jury needs to first determine the amount each policyholder incurred to complete repairs (if any) and then compare that amount to State Farm's ACV payment.  Arnold attempts to dismiss this critical issue via a footnote.  *See* PageID.1155 n.10.  But her arguments (and authorities) are inapt.

---

[32] *See also Schafer v. State Farm Fire & Cas. Co.*, No. 06-8262, 2009 WL 2391238, at *6-8 (E.D. La. Aug. 3, 2009) (denying class certification for claims based on insurer's supposed use of understated pricing in estimates because, even assuming prices were understated, insurer at trial could show the sufficiency of each payment "as a *whole*," which would lead to an overwhelming number of mini-trials); *Caruso v. Allstate Ins. Co.*, No. 06-2613, 2007 WL 2265100, at *5 (E.D. La. Aug. 3, 2007) (predominance failed in suit challenging insurer's alleged uniform claim payment practice because trial would require individualized proof regarding each insured's cause of loss and individual damages); *Crutchfield v. Sewerage & Water Bd. of New Orleans*, No. 13-4801, 2015 WL 3917657, at *9-10 (E.D. La. June 25, 2015) (similar); *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 329-30 (N.D. Tex. 2012) (similar).

Numerous courts have applied "cap" language similar to the language in State Farm's policies to hold that the insurer is not obligated to make payments for ACV that exceed the policyholder's incurred costs to complete repairs.  For example, in *Weidman v. Erie Insurance Grp.*, 745 N.E.2d 292 (Ind. Ct. App. 2001), the plaintiff sought summary judgment on a claim for breach of contract based on his insurer's alleged underpayment of ACV.  *Id*. at 296.  The policy, however, provided that the amount owed for ACV would "not exceed the amount necessary to repair or replace the damaged property."  *Id.* at 295.  The court thus considered whether the plaintiff's actual repair costs were higher or lower than the claimed ACV amount – for only if they were higher could the insured establish underpayment.  *Id.* at 298-99.  But there was no proof of "what [the insured] expended, including his own labor and costs . . . ."  *Id.*  As a result, the court could not conclude that the insurer breached the policy by allegedly underpaying ACV.  *Id.*

Similarly, in *Koch v. State Farm Fire and Casualty Co.*, the policy provided that losses would be settled at "actual cash value," but expressly stated that the insurer would "not pay an amount exceeding that necessary to repair or replace."  565 So. 2d 226, 232 (Ala. 1990).  State Farm offered evidence of the cost to replace the damaged floor with comparable flooring, and that the amount of its payments to the plaintiffs (plus their deductible) was sufficient to cover this cost.  *Id*. at 232-33.  Finding that the express terms of the policy provided that State Farm was "under no obligation to pay any more than replacement cost," and that State Farm had already done so, the Alabama Supreme Court held that the trial court properly directed a verdict in State Farm's favor.  *Id*. at 233; *see also Great Am. Ins. Co. v. R.R. Furniture Salvage of Mobile, Inc.*, 162 So. 2d 488, 494 (Ala. 1964) (holding that a cost to repair cap on ACV "must be enforced as written" and "expressly limits the damages for which the defendant is liable to the actual cash value of the property at the time of loss, but not to exceed the cost of repair").

The same principle was applied in *Legacy Condominiums, Inc. v. Landmark American Insurance Co.*, No. 1:06-CV-1108-KS-MTP, 2008 WL 80373 (S.D. Miss. Jan. 4, 2008), where the policy limited the insurer's payment obligation to the amount that the policyholder "actually spent" for repairs. *Id*. at *2. The policyholder complained that he was entitled to recover all costs his insurer had estimated once he completed repairs, even though his incurred cost was lower. *Id*. at *2-3. The court disagreed and granted summary judgment for the insurer, holding that "repairs actually made render estimates for those same repairs irrelevant," and that the insurer's obligation was effectively capped at the policyholder's cost to repair. *Id*. at *3; *see also Stiers v. State Farm Ins.*, No. 3:11-CV-437, 2012 WL 2405982, at *4 (E.D. Tenn. June 25, 2012) (disputes regarding alleged miscalculations of ACV *irrelevant* once insured paid his full cost to complete repairs).[33]

Arnold ignores these cases. Instead, she cites two cases where the policies at issue *did not contain* a "cost to repair" cap in the ACV section of the policy, but rather only in the replacement cost section. *See* PageID.1155 n.10 (citing *Mills*, 511 F.3d at 1304-05; *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 F. App'x 955, 962 (6th Cir. 2005)). Even courts adopting Arnold's position under materially different policy language have recognized the significance of whether the "cap" language appears in the ACV provision or the replacement cost provision.[34]

---

[33] *See also Lincoln Fountain Villas Homeowners Ass'n v. State Farm Fire & Cas. Ins. Co.*, 39 Cal. Rptr. 3d 345, 354 (Cal. Ct. App. 2006) (alleged underpayment for ACV was moot where the plaintiff insured had completed all repairs at a cost below his allegedly inadequate ACV payment); State Farm Fire & Cas. Co. v. Patrick, 647 So. 2d 983, 983-84 (Fla. Dist. Ct. App. 1994) (rejecting claim for total estimated replacement cost benefits where policy capped payment at actual repair costs and insured completed repairs for less than the ACV payment); Matthews v. State Farm Fire & Cas. Co., No. 06-4758, 2007 WL 2127581, at *2 (E.D. La. July 24, 2007) (insured could not recover more than incurred cost to repair given policy cap).

[34] *See Tritschler v. Allstate Ins. Co.*, 144 P.3d 519, 528 n.6 (Ariz. Ct. App. 2006) (rejecting insurer's effort to apply the rule from *Weidman* given that the "cap" language in its policy appeared in the replacement cost provision, not the ACV provision).

Arnold also cites the Eighth Circuit's decision in *Stuart* (PageID.1155), but the court there indisputably did not analyze or even *reference* the "cap" language.  *See Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 374-76 (8th Cir. 2018).[35]  Simply put, Arnold has not cited to a *single* case that meaningfully addresses a "cost to repair" cap in an ACV provision and holds that the language is unenforceable when the policyholder demands additional money for ACV that exceeds their actual repair costs.[36]

<h3 style="text-align:center">2.   Applying the "Cap" Language Here Will Require Extensive Fact-Finding.</h3>

State Farm's showing as to the individualized analysis necessary to determine each policyholder's actual repair costs is uncontroverted.  Policyholders *do* often complete repairs for less than State Farm's estimate of replacement cost (and sometimes for less than the estimated ACV), as examples from the claim file sampling illustrate.  On claim 01-414Z-520, State Farm estimated total replacement costs of $8,991.34 and issued an ACV payment of $7,292.32 (with non-material depreciation of $258.17).  Albright Rpt., PageID.7742.  But the policyholder submitted a signed contract covering all repairs for just $7,942.32 – less than State Farm's ACV payment of $7,292.32 plus the deductible of $1,000.  *Id.*  No amount for "withheld" depreciation could possibly be owed for this claim.  *See id.*  Similarly, for claim 01-6D06-138, the policyholder completed full repairs for $1,090, less than his ACV payment (after $238 of depreciation) of $1,095.84.  Berryman Rpt., PageID.7673-7674.  Neither of these insureds could have been injured

---

[35] *Salesin v. State Farm Fire & Casualty Company*, 581 N.W.2d 781, 791-92 (Mich. Ct. App. 1998), also did not meaningfully address the "cap" language.  Moreover, the court in *Salesin* ultimately held that a class *could not be certified* because the only supposedly common issues had already been resolved.  *Salesin v. State Farm Fire & Cas. Co.*, No. 239221, 2003 WL 22299828, at *2 (Mich. Ct. App. Oct. 7, 2003).

[36] An insured may choose not to repair or replace their damaged property.  In such circumstances, an insured is entitled only to the actual cash value payment for their property.  *See Hilley v. Allstate Ins. Co.*, 562 So. 2d 184, 189-90 (Ala. 1990).  Yet that would not relieve Plaintiff of her burden to prove the insufficiency of the ACV payment at trial.

by the application of "labor depreciation" (indeed, their ACV payments covered their *full*, undepreciated, labor costs).

Many of these claims will exist across the putative class.  Indeed, approximately half of the 155 claims Albright reviewed were ACV-only claims – *i.e.*, claims where no RCBs were paid. Albright Rpt., PageID.7728.  There could be many thousands of claims where a detailed file review and targeted discovery (for repair records never submitted to State Farm) would reveal that the policyholder completed some or all repairs for the ACV payment for those repairs.

Arnold has no "viable theory employing generalized proof" that can address these issues, as the predominance requirement demands.  *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327-29 (5th Cir. 2008) (denying Rule 23(b)(3) certification in part because individualized proofs would be required at trial to adjudicate affirmative defenses).  Thus, a class trial here will either be a series of thousands of mini-trials on individualized evidentiary issues that State Farm is entitled to present – or a single trial where State Farm is effectively precluded from defending each insurance claim on its merits, in violation of its due process rights.  *See Dukes*, 564 U.S. at 367.

### D.    Arnold's Class Certification Authorities Are Not Persuasive Here.

Arnold urges this Court to certify her asserted class because certification was ordered in the *Stuart*, *Hicks*, and *Mitchell* labor depreciation actions (two of which, *Hicks* and *Mitchell*, are now currently on accepted Rule 23(f) appeals).  PageID.1156-1160.  She argues that these cases show the purported ease with which a "labor depreciation" case can be tried on a class basis (even though no trial has occurred).  *Id.*[37]  Arnold substantially overstates her authorities.

*Stuart* was the second of two labor depreciation cases heard by the Eighth Circuit on Rule

---

[37] She also cites the district court's certification order in *LaBrier*, even though that order was reversed precisely because the plaintiff could not demonstrate predominance.  872 F.3d at 577.

23(f) appeals.  *See supra* at 24-25.  The first, *LaBrier*, was decertified.  872 F.3d at 577.  In *Stuart*,

the court affirmed class certification, but the decision is not persuasive here.  *Stuart* involved State

Farm's claim handling during a short period of time when Arkansas law prohibited "labor

depreciation" outright.[38]  910 F.3d at 376.  Further, *Stuart* failed to recognize, as *LaBrier* correctly

did, that determining whether a policy has been breached requires consideration of an insurer's

*total* claim payment in comparison to the insured property's value, not merely the manner in which

that claim payment was calculated.[39]  *See id*. at 375-76.  *Stuart* also failed to consider how the

"cost to repair" cap on State Farm's ACV obligation might impact the individualized proofs

needed in a class trial.  *See id.*  The reasoning underlying the certifications ordered in *Hicks* (under

Sixth Circuit review) and *Mitchell* (under Fifth Circuit review) is flawed for similar reasons—

neither court properly analyzed how the fact-specific claims and State Farm's defenses could

possibly be tried on a class-wide basis using common evidence.

Arnold's reliance on three auto insurance class actions involving alleged claim

underpayments also fails.  PageID.1148.  In *Slade v. Progressive Security Insurance Co.*, 856 F.3d

408 (5th Cir. 2017), the plaintiffs claimed that their insurer underpaid claims for the value of

totaled vehicles by using values lower than those published in readily available market guides

(Blue Book and NADA).  *Id.* at 411.  Here, however, there is no comparable guide for the value

of aged roofs or other structural components.  State Farm's ACV payments are instead based on

---

[38]  Arkansas now permits "labor depreciation" by statute, ARK. CODE § 23-88-106 (2017), effectively superseding prior Arkansas Supreme Court precedent prohibiting labor depreciation as against public policy.  *See Shelter Mut. Ins. Co. v. Goodner*, 477 S.W.3d 512, 515-16 (Ark. 2015).

[39]  The panel in *Stuart* erred in basing its ruling on the separate definition of ACV in State Farm's Arkansas policy.  *See Stuart*, 910 F.3d at 376.  Notably, however, neither the HO policy nor the MH policy contains a separate definition of ACV like the one in *Stuart*.  *See* HO Policy, PageID.61-62; MH Policy, PageID.1706-1708.

*estimates* of replacement costs, and those estimates can be overstated. *See supra* at 5.[40]

   *Steinberg v. Nationwide Mutual Insurance Co.*, 224 F.R.D. 67 (E.D.N.Y. 2004), is also inapt. The insurer in *Steinberg* allegedly deducted a "betterment" charge from payments made *after* repairs were completed (or from an agreed upon repair cost), *see id.* at 70, while here State Farm indisputably pays ACV *before* repairs, based solely on an estimate. Thus, whether State Farm's underpaid any policyholder for ACV cannot be determined simply by adding back any initially applied "labor deprecation."

   Finally, Arnold's reliance on *Jones v. Government Employees Insurance Co.*, No. 6:17-CV-891, 2019 WL 1490703 (M.D. Fla. April 4, 2019), is misplaced because the plaintiffs in that case sought an identical damages figure for every claim in the class – $79.85. *See id.* at *6. Here, in contrast, whether any policyholder was damaged by "labor depreciation" and, if so, by how much, can be determined only through a time-intensive, labor-intensive, individualized file review.[41] Arnold's remaining cases also do not help her arguments on predominance.[42]

---

[40] State Farm's highly individualized decisions on depreciation further distinguish this case from *Slade*, where the court acknowledged that a challenge to the insurer's individualized "condition adjustments" might "have run into predominance problems." *See Slade*, 856 F.3d at 412.

[41] This fact also distinguishes this case from two other authorities Arnold relies on. In one, the court held that the need to construct grids to deal with differences in policy language did not defeat predominance because, once constructed, the grids would make class-wide damages calculations nearly *automatic*. *In re Monumental Life Insurance Company*, 365 F.3d 408 (5th Cir. 2004). And in the other, predominance was satisfied based on the contention that computer programming could automatically identify class members and determine their damages. *Young v. Nationwide Mutual Insurance Company*, 693 F.3d 532 (6th Cir. 2012).

[42] The court in *Klay* denied class certification for the contract claims asserted there. *See Klay*, 382 F.3d at 1262-63. The state law class certification standards applied in *Robertson* and *McLaughlin* do not demand the rigorous analysis required under Rule 23. *See Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 179, 188-89 (Ark. 2010) (recognizing that Arkansas courts adhere to a "'certify now, decertify later' approach to class action litigation"); *McLaughlin v. Fire Ins. Exch.*, No. 1316-CV-11140, at 4 (Jackson City, Mo. July 12, 2017) (under Missouri's approach to class certification, "the court accepts plaintiff's allegations as true"). The Alabama trial court certification order in *McCain v. Baldwin Mut. Ins. Co.*, No. 2010-901266 (Montgomery Cty., Ala., Oct. 18, 2016), was reversed on appeal, *see* 260 So. 3d 801 (Ala. 2018). Unlike in *Tyson Foods,*

III.     **Arnold Has Not Demonstrated Superiority.**

Resolution of the aforementioned scores of individualized factual issues addressing State Farm's alleged liability and damages (if any) owed to putative class members will require tens of thousands of minitrials.  That is not a "readily manage[able]" case.  PageID.1162.

Arnold's principal case on manageability confirms the point.  In *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978), the class was manageable precisely because it was "*not…necessary to hear evidence on each claim.*"  *Id.* at 1112 (emphasis added).  The interest charges at issue there were calculated and assessed automatically by computer; thus, the key factual questions for each claim – whether the interest charged exceeded the legal rate – could also be answered easily "by a computer, perhaps with some clerical assistance."  *Id.* at 1109, 1112-15.

Here in contrast, the amount State Farm paid to each policyholder was not determined automatically by a computer, nor can the sufficiency of the payments be determined by computer. Johnson Dep., PageID.7910-7912 at 219:1-220:9, 233:20-234:25.  Whether State Farm underpaid any policyholder for ACV instead necessarily requires "evidence on each claim."  *Roper*, 578 F.2d at 1112.  Indeed, the Eighth Circuit in *LaBrier* reversed class certification for this very reason.  *See LaBrier*, 872 F.3d at 574, 577 (sufficiency of State Farm's ACV estimates "must be determined by a jury" and must be "based on all the facts surrounding a particular [loss]").[43]

_____

*Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045-46 (2016), State Farm's defenses to the claims in this case are not "peculiar" to some putative class members, but rather impact the majority of class members.  Finally, the unpublished class certification order in *Green v. American Modern Home Insurance Company*, No. 4:14-04074 (W.D. Ark. Aug. 24, 2016), is not persuasive, as the case settled after the defendant's Rule 23(f) appeal had been accepted.  *See Green v. Am. Modern Home Ins. Co.*, No. 4:14-CV- 4074, 2017 WL 2389709 (W.D. Ark. June 1, 2017) (final approval of class settlement); Judgment, *Green v. Am. Modern Home Ins. Co.*, No. 16-8016 (8th Cir. Sept. 29, 2016) ("The petition for a 23(f) appeal is granted.").

[43] *Roth v. GEICO General Insurance Company* (*see* PageID.1162 n.13) has no application to the manageability quandary here.  The plaintiffs in *Roth* alleged that their insurer failed to pay sales tax and title transfer fees in adjusting total loss claims for leased vehicles.  *See* Omnibus Order at

The steps needed here to determine liability and damages (if any) are extremely time-intensive. *See supra* at 12 n.10.[44]  In fact, Johnson has admitted that he would review each of the approximately 54,000 claim files potentially at issue here both to determine if a claim fell in the class and to calculate damages (if any) and interest allegedly owed.  *See* Johnson Dep., PageID.7905-7906, 7910-7912 at 180:11-185:24, 219:1-220:9, 233:20-234:25.[45]  The necessary review would involve individualized factfinding regarding which repairs were completed, actual repair costs, and the nature, amount and dates of any supplemental payments.  *See id.; see supra* at 16-17.[46]  And State Farm further has shown that it will be necessary to review repair records

1-2, *Roth*, No. 0:16-cv-62942 (S.D. Fla. Sept. 19, 2018), ECF No. 267, *appeal docketed*, No. 19-11652 (11th Cir. Apr. 25, 2019).  By the time class certification was ordered, the only tasks left in the case were to (1) eliminate individuals without leased vehicles and (2) "double-check[]" the insurer's files to see if the sales tax had been paid.  *Id.*  Per the court, these "simple" administrative tasks could be supervised by a magistrate.  *Id.* at 3.  There are no such "simple" tasks here.

[44] To the extent Arnold is arguing for some form of "bifurcation" of liability and damages issues, such a process would violate State Farm's Seventh Amendment rights.  State Farm is entitled to have *one* jury hear all evidence related to its liability, including evidence addressing causation, injury, and the defenses it will raise for individual insureds' claims.  Here, there is no feasible way to separate evidence addressing those liability issues from the extensive, individualized process Arnold proposes for confirming insureds' class membership and calculating their damages.  Rule 23 cannot be applied to impair State Farm's substantive right to a jury trial.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997); *Dukes*, 564 U.S. at 366-67.

[45] It could take years to complete such a review.  While Johnson initially estimated he would spend 2-3 minutes per file (Johnson Rpt., PageID.7453, 7465), the evidence shows – and he agreed when pressed – that a more realistic estimate is 15-20 minutes per file on average.  *See* Johnson Dep., PageID.7915 at 275:24-276:1.  Indeed, it took him almost 30 minutes during his deposition just to identify the amount of allegedly "withheld" labor depreciation for a simple claim where no RCBs were paid.  *See* Video of Johnson Dep., filed conventionally as Ex. 13, Excerpt 1.

[46] Johnson's proposed interest calculations will be particularly complex for anyone with more than a single payment – multiple calculations will be required, with multiple "withheld" amounts and multiple "dates of withholding."  *See* Video of Johnson Dep., filed conventionally as Ex. 13, Excerpt 2.  His assertion that he could calculate interest in just "seconds" for each claim (Johnson Rpt., PageID.7466-7467) simply is not credible, as it was clear during his deposition that he had not considered the realities of those calculations.  Video of Johnson Dep., filed conventionally as Ex. 13, Excerpt. 3.

that presently are in the sole possession of its policyholders.  *See* Burney Decl., PageID.7646 at ¶¶ 25-26.  This is anything but manageable.[47]

Arnold's unrealistic claims about the purported ease of calculating damages in this case are reminiscent of similar assertions rejected in *Krukever v. TD Ameritrade, Futures and Forex LLC*, 328 F.R.D. 649 (S.D. Fla. 2018).  The plaintiff there presented a formula for calculating class members' damages and asserted that the calculations could easily be performed.  *Id.* at 661.  The court disagreed.  It held that the proposed calculations would be "simply impossible without conducting complex and fact specific inquiries" – through dozens of mini-trials – "to determine the proper and accurate data to plug into the formula."  *Id.* at 662.  Per the court, the burden imposed by the proposed formula was "simply intolerable," defeating class certification.  *Id.*[48]

Arnold attempts to minimize the difficulty inherent in her expert's damages approach by falsely asserting that State Farm applied the same formula when it made some supplemental payments on then-current claims after the Court's ruling on State Farm's dismissal motion.  PageID.1146, 1163.  But those payments were not calculated under Johnson's approach, were not "refunds" or payments of "damages" for years-old claims, and required time-intensive and complex individualized analysis.[49]

---

[47] Arnold also misrepresents the documents discussing "personal rules" for XactAnalysis.  These documents do reflect any "process" for calculating damages or interest for particular claims.  Pl. Br., PageID.1145-1146.  Rather, they were simply a "checks and balances" system for addressing potential claim handling issues in close to real time.  *See* O'Toole Dep., PageID.7925 at 106:24-107:8.

[48] *See also Brown*, 817 F.3d at 1240 (the need for complex, individualized damages calculations defeats superiority, particularly if they involve "individualized questions going to liability"); *DeWitt*, 85 So. 3d at 385 (no superiority due to the need for "evidence regarding thousands of individual claims"); *Atlas Roofing*, 321 F.R.D. at 446 (no superiority given the need for individualized fact-finding, including property inspections).

[49] After this Court ruled that State Farm's policy could be interpreted to preclude "labor depreciation" for ACV payments, State Farm adjusted its claim payment practice in Alabama to comport with the Court's Order.  *See* O'Toole Decl., PageID.7407 at ¶ 3.  There was a brief delay

Arnold also errs in arguing that superiority is satisfied because class litigation supposedly is the only way for policyholders to challenge the sufficiency of ACV payments. *See* PageID.1160-1162. In fact, the HO and MH Policies give each policyholder the right to invoke a binding appraisal process for disputes regarding the amount of their loss, without the expense or delay attendant to litigation. *See* HO Policy, PageID.43; MH Policy, PageID.1719; Johnson Dep., PageID.7916-7917 at 312:23-316:5.[50] That fact weighs heavily against a finding of superiority.

## IV.   **Arnold Has Not Demonstrated Adequacy .**

Class certification is improper unless the named plaintiff can "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must ensure that the plaintiff has "the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). In addition, adequacy fails if there is "even an arguable defense" to the proposed representative's claim that will not be applicable to the class. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011).

---

following the Court's ruling, however, before State Farm could modify the default settings in Xactimate for Alabama estimates. *See id.*, PageID.7407 at ¶ 4. To address that gap period, State Farm undertook the time-consuming and labor-intensive process of identifying and addressing claims where an estimate was prepared post-dating the Court's Order that reflected application of "labor depreciation" in the estimate (the "Gap Period Claims"). *Id.*, PageID.7407-7407 at ¶¶ 4-5. For the Gap Period Claims, State Farm issued a supplemental ACV payment only if the policyholder had not yet been paid their incurred cost to complete the repairs as to which depreciation had been applied. *Id.* It took a team of 11 experienced adjusters two weeks, or approximately 15-20 minutes per file on average, to review 968 claims and determine the need for supplemental payments. *Id.*, PageID.7408, 7410 at ¶¶ 6, 11-13. Importantly, State Farm did not make any effort to isolate "still withheld" labor depreciation for repairs where RCBs had been paid *or* where its records showed the policyholder was able to complete repairs using their ACV payment. *Id.*, PageID.7409 at ¶ 9. Moreover, State Farm did not calculate any interest. *See id.* This evidence only *reinforces* the unmanageable process Arnold's model would entail.

[50] The appraisal process distinguishes this case from *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013), and *Smith*, 2017 WL 1044692, at *15, since in both cases class litigation was the only way for the plaintiffs to seek redress.

Arnold is not an adequate class representative for several reasons.  First, she is the debtor in a pending Chapter 13 bankruptcy action.  *See* Voluntary Petition, *Annie P. Arnold*, No. 2:18-bk-01919 (Bankr. S.D. Ala. May 14, 2018); *see also* Pl's Responses to State Farm's First Set of Interrogatories, PageID.7930.  Her litigation interests are thus the property of the bankruptcy estate and belong to the trustee unless otherwise ordered.  *See Rader v. Teva Parenteral Meds, Inc.*, 276 F.R.D. 524, 529 (D. Nev. 2011).  Because Arnold has no standing or right to litigate or settle her claim, she cannot serve as a class representative.  *Id.*; *accord In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 56 (D.N.H. 2015).

Second, Arnold's claim submissions raise serious integrity issues.  *Kirkpatrick*, 827 F.2d at 726.  As noted earlier, Arnold secured nearly $50,000 in replacement cost benefits based on repair cost submissions she told State Farm she would incur, but then never did.  *See supra* at 8.  Arnold's misrepresentation regarding repair costs could also void her HO policy altogether and defeat her claims for further payment of ACV.[51]  Arnold also failed to disclose this suit in her initial bankruptcy petition.[52]

Finally, her status as an "interest only" claimant differentiates her from the majority of class members who have not yet recovered full replacement cost benefits.  The separate defenses for her claims, *see supra* at 15, are further proof of her inadequacy.  *CE Design*, 637 F.3d at 726.

---

[51] Arnold's policy (like all State Farm policies) states that the policy is "void" if the policyholder "has intentionally concealed or *misrepresented* any material fact or circumstances relating to this insurance, whether before or *after* a loss."  HO Policy, PageID.48 at #2 (emphasis added); *see also Cook v. Trinity Universal Ins. Co. of Kansas*, No. 7:06-CV-02029-LSC, 2007 WL 9717431, at *10 (N.D. Ala. Dec. 13, 2007) (holding policy void due to intentional misrepresentations).

[52] This fact alone could render her unfit to serve as a class representative, *see Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1182 (11th Cir. 2017), even though she later amended her bankruptcy disclosures (without explanation) just days before her deposition.  *See* Schedule A/B at 6, *Annie P. Arnold*, No. 2:18-bk-01919 (Bankr. S.D. Ala. Oct. 1, 2018).

Arnold's counsel has sought through the Class Motion to add Abney, Daniel and Scruggs as representatives. But they also fail the adequacy requirement, for they are not parties and have not individually asserted any claims. Rule 23 provides for class representation through "representative *parties*." Fed. R. Civ. P. 23(a) (emphasis supplied); *see also* Fed. R. Civ. P. 23(a)(3), (4) (typicality and adequacy requirements referring to "parties").

Arnold indisputably has not moved for leave to amend the Complaint to add these individuals as named plaintiffs. Nonetheless, she contends that courts routinely appoint non-parties as class representatives. PageID.1153 n.9. But she miscites one of her two authorities,[53] and the other – *In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271 (S.D. Ohio 1997) - is poorly reasoned. The court in *Telectronics Pacing* allowed substitution of class representatives who were not yet parties, observing that class members can be passive and need not intervene in class suits, that substitution of representatives is allowed under Rule 23,[54] and that class members will be bound by a judgment in the action. *Id.* at 283. However, those factors apply only *after* a class is certified. Until then, the *only* parties before the court are the named plaintiffs and the defendant. *See Bailey v. Cumberland Cas. & Surety Co.*, 180 F. App'x 862, 865 (11th Cir. 2006); *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654-55 (3d Cir. 1998).[55] Indeed, in *Bailey*, the Eleventh Circuit cited the pre-certification distinction applicable to substitution of class

---

[53] In *Fisher*, the court denied class certification because, among other things, class counsel had "failed to present a single *named plaintiff* who belongs to the class and possesses standing to represent the interests of the class." 238 F.R.D. at 300 (emphasis supplied). The court at most noted in *dicta* that substitution of representatives *might* be permitted in certain situations. *Id.* at 300 n.61.

[54] Although Rule 23(d) has been interpreted to allow such substitutions, it applies *only* to actions conducted "under" Rule 23 – *i.e.*, to *certified* class actions. *See* Fed. R. Civ. P. 23(d).

[55] Arnold does not seek "substitution" here, making this action distinguishable from *Telectronics* in any event. 172 F.R.D. at 283.

-39-

representatives when upholding dismissal of an asserted class suit as time-barred *without* allowing time for identification of "substitute" or alternative representatives.  180 F. App'x at 865.

Arnold's asserted class definition encompasses individuals insured under multiple structural policy forms.  Even without the adequacy problems described above, she could not represent asserted class members with any policy *other* than the HO policy she had with State Farm.  *See supra* at 20-21 n.26.

## CONCLUSION

For these reasons, State Farm respectfully requests that this Court deny Arnold's Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel.

Dated: September 19, 2019

Respectfully submitted,

   */s/   Joseph A. Cancila, Jr.*

James B. Newman (NEWMJ8049)
HELMSING LEACH HERLONG NEWMAN
& ROUSE
150 Government Street, Suite 2000
Mobile, Alabama 36602
Tel: 251-432-5521
Email: jbn@helmsinglaw.com

Joseph A. Cancila, Jr.*
Jacob L. Kahn*
Tal C. Chaiken*
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
Tel: 312-471-8700
Email: jcancila@rshc-law.com
        jkahn@rshc-law.com
        tchaiken@rshc-law.com
* Admitted *pro hac vice*

*Attorneys for Defendant State Farm Fire
and Casualty Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This 19th day of September, 2019.

<span style="display:block; text-align:right;"><u>    /s/    *Joseph A. Cancila, Jr.*                </u></span>