IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANNIE ARNOLD, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )   CIV. ACT. NO. 2:17-cv-00148-TFM-C |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court is *State Farm's Motion to Exclude Expert Opinions of Toby Johnson and Memorandum of Law in Support* (Doc. 122, filed November 19, 2019). The parties appeared for a two-day evidentiary hearing to address pending motions on March 26-27, 2020 which included this motion. After a careful review of all the written pleadings, motions, responses, replies, and exhibits, and having heard the arguments and testimony presented by the parties, the Court **DENIES** the motion to exclude expert testimony (Doc. 122) for the reasons articulated below.

**I.    STANDARD OF REVIEW**

The admission of expert testimony is governed by Fed. R. Evid. 702, which provides that, if "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," a witness "qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise." FED. R. EVID. 702. The U.S. Supreme Court elucidated this requirement in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed.2d 469 (1993) and its progeny,

noting that district courts are gatekeepers charged with ensuring that "speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002). In determining the admissibility of expert testimony under *Daubert,* the district court must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable*;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291-92 (11th Cir. 2005). "While there is inevitably some overlap among the basic requirements — qualification, reliability, and helpfulness — they remain distinct concepts and the courts must take care not to conflate them." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011) (citation omitted).

The district court's objective is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The proponent of the expert testimony bears the burden of demonstrating that the expert is qualified to render his testimony, the methodology by which he reached his conclusions is sufficiently reliable, and his opinions will assist the trier of fact. *Id*.

If a witness' qualifications to render an opinion rest exclusively or primarily on experience, the witness "must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. at 1261 (emphasis in original) (internal quotations and citation omitted). Reliability may not be premised "merely by the *ipse dixit* of an admittedly qualified expert." *Id*. When determining

reliability, the district court may take into consideration a range of factors, including: (1) whether the expert's theory can be, and has been, tested; (2) whether the expert's theory has been subjected to peer review and publication; (3) whether the employed technique has a known error rate; and (4) whether the methodology is generally accepted in the scientific community. *Id.* at 1262; *McCorvey*, 298 F.3d at 1256. These factors, however, are non-exhaustive. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 150, 119 S. Ct. 1167, 1175, 143 L. Ed. 2d 238 (1999). The district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home,* 996 F.2d 266, 268 (11th Cir. 1993).

## II.    DISCUSSION AND ANALYSIS

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As to Dr. Richards' testimony, the Court turns to the three factors it must consider: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1183 (11th Cir. 2013). Plaintiff, as the party offering the testimony, must meet each prong by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert*, 509 U.S. 579, 592 n. 10, 113 S. Ct. 2786, 125 L. Ed 2d 469).

Defendant State Farm Fire and Casualty Company ("State Farm") moves the Court to

exclude the opinions and testimony of Plaintiff's expert Toby Johnson ("Johnson") by arguing that he is unqualified to render his opinions; his opinions do not "fit" Plaintiff's theory of liability in the case; and his methodology is unreliable under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

First, State Farm take issue with Johnson's qualifications. State Farm asserts that Johnson, a longtime independent claims adjuster, lacks the requisite knowledge of State Farm's records to determine whether class members could be readily ascertained and damages determined without excessive individualized inquiry. State Farm asserts that Johnson's proposed methodology is based on his experiences using other insurers' claims-management systems, not State Farm's, and thus, he is not qualified to offer opinions as to the functionalities or capabilities of State Farm's systems.

Plaintiff responds that the *Daubert* factors are not all relevant to the testimony in this case because it is not scientific, Johnson has an extensive background in insurance, and he has actually performed the activities that are the subject of his report. Plaintiff argues that courts have variously allowed insurance adjusters to testify as lay witnesses or expert witness, under Fed. R. Evid. 701 and 702, including some who, like Johnson, were essentially providing time estimates based on their own work experience.

A.      **Qualifications**

Under FED. R. EVID. 702, a witness may be qualified as an expert by virtue of his or her "knowledge, skill, experience, training, or education." An expert is "not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007) (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "The qualification standard for expert testimony is not

stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility.*" Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations and internal quotations omitted); *see also United States v. Brown*, 415 F.3d 1257, 1270 (11th Cir. 2005) (citing *United States v. Hernandez*, 141 F.3d 1042, 1052 (11th Cir. 1998)) ("Questions about the weight given to testimony, as distinguished from the issue of its admissibility, are for the factfinder.").

In his report Johnson attests that he has worked in the property insurance industry for sixteen (16) years as both an independent claims adjuster and an independent public adjuster; he frequently serves on property-insurance-appraisal panels; and he serves as a court-appointed insurance-appraisal umpire in Tennessee and Kentucky. Doc. 90-11 at 5. Johnson has been a licensed property and casualty insurance adjuster in Alabama since 2010, and he is familiar with Xactimate estimating software which is used by State Farm and claims management software used by property-insurance companies. *Id*. at 5-6. Despite Johnson's wealth of relevant experience, State Farm asserts that his experience is based on years of work with other insurance companies' systems and not State Farm's, but they do not provide specifics demonstrating why any such distinction is relevant except to say generally that Johnson lacks familiarity with State Farm's internal claims systems.

In response, Plaintiff asserts that State Farm denied him access to its electronic claim system ("ECS"), asserting trade-secret privileges. Thus, Johnson relied on the information State Farm did provide. Indeed, State Farm argues, in its reply, that it produced some 50,000 pages of documentations concerning 155 Alabama insurance files involving structural-damages claims, which State Farm asserted to the Court was sufficient data produced in a reasonably usable form, as required by Fed. R. Civ. P. 34(b). Thus, State Farm's argument now that Johnson is unqualified

to render an opinion because he lacks sufficient knowledge of State Farm's claims adjustment system appears disingenuous. State Farm tries to cut their argument both ways. Moreover, State Farm fails to sufficiently detail what knowledge about its ECS Johnson lacks to render his opinions. The Court finds State Farm's arguments as to Johnson's qualifications unconvincing and finds Johnson is qualified to render his opinions.

**B.     Reliability**

State Farm also argues that Johnson's methodology is unreliable under the *Daubert* factors because it has not been tested and Johnson cannot identify a potential error rate.

"When determining the reliability of an expert's opinion, a trial court must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue.'" *Curtis Inv. Co., LLC v. Comm'r*, 909 F.3d 1339, 1350 (11th Cir. 2018) (quoting *United States v. Frazier*, 387 F.3d 1244, 1261-62 (11th Cir. 2004)). Put differently, when ascertaining reliability, the Eleventh Circuit has identified several factors which can be considered: "(1) whether the expert's methodology can be tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method has a known rate of error; (4) whether the technique is generally accepted by the scientific community." *Rink v. Cherminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Frazier*, 387 F.3d at 1262 (citations omitted). However, these factors are not exhaustive and a court "should consider any additional factors that may advance its Rule 702 analysis." *Quiet Tech*, 326 F.3d at 1341; *see also Rink*, 400 F.3d at 1292 (citations omitted) (noting the list of factors is not exhaustive,

the factors are not a definitive checklist, and district courts have substantial discretion in deciding how to test an expert's reliability).

The Supreme Court emphasized the *Daubert* analysis is a flexible one. *Kumho Tire,* 526 U.S. at 150, 119 S. Ct. at 1175. The Advisory Committee note to Rule 702 states

> Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.

FED. R. EVID. 702, Advisory Committee's Note. Further, the reliability inquiry established by *Daubert* is not intended to "supplant the adversarial system," meaning that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citing *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798) (internal quotation and citation omitted).

State Farm asserts that Johnson testified that the documentation State Farm provided to Plaintiff during discovery covering 155 sample claims could be used to determine class membership and calculate damages, but Johnson did not actually make such determinations. State Farm argues that when Johnson was asked during his deposition to demonstrate his methodology using those materials, it took him nearly thirty (30) minutes to calculate non-material depreciation on a single claim and three (3) additional minutes to confirm that no replacement-cost benefits were paid, and Johnson failed to include any time for calculating interest owing on the claim.

State Farm asserts that the time it actually took Johnson to demonstrate his methodology during the deposition was in line with time estimates provided by State Farm's own representative, Lisa O'Toole ("O'Toole"), who analyzed approximately 1,000 Alabama claim files as part of a

program to refund labor depreciation withheld between August 2, 2017 and August 25, 2017. *See* Docs. 90-6, 90-9, and 90-14. State Farm also asserts that Johnson's proposed methodology does not rely on common evidence, as required, presumably because he did not have access to State Farm's ECS. As to error rate, State Farm asserts that merely "toggling" the settings in the widely used Xactimate software to remove labor depreciation estimates could result in errors because the claim files may not accurately reflect the current status of the claim.

As Plaintiff argues, testing and error rates do not readily apply to Johnson's testimony because it is nonscientific. Perhaps more important to a determination here is Johnson's experience, skill, and knowledge as a property-insurance adjuster. Johnson attests that the Xactimate software used by State Farm to determine ACV estimates is widely used in the industry. Plaintiff also asserts that State Farm has long used Xactimate software to uniformly determine ACV values in a way that is functionally identical to Johnson's own use of Xactimate. Moreover, Defendants concede in their argument that, despite his lack of access to State Farm's ECS, he used the paper documents he was provided to produce a sample determination during his deposition. State Farm's argument that it took Johnson longer to produce the calculations than the average amount of time per claim he estimated in his report, if it is relevant at all, speaks more to credibility than to State Farm's argument that he did not perform sufficient testing. Therefore, the Court finds that the information is sufficiently reliable and the issues State Farm raises may be addressed appropriately in cross examination.

C.  **Testimony Will Assist Trier of Fact**

State Farm finally argues that Johnson's opinions do not "fit" Plaintiff's theory of liability because his proposed method of calculating damages is too broad and would incorporate damages amounts beyond those contemplated by the lawsuit. Specifically, State Farm asserts that merely

pulling out the labor-depreciation amount that State Farm put into its ACV estimates would risk overpaying policyholders because the ACV estimate are imprecise and may have resulted in overpayment of the actual cash value of the damaged property.

Whether State Farm accurately estimated the ACV for each policyholder outside the labor-depreciation amounts is irrelevant to this lawsuit for reasons discussed more fully *infra*.  Plaintiffs allege that State Farm improperly withheld labor depreciation from its payments to policyholders, contrary to the terms of the policy, and Johnson's method of calculating damages accounts precisely for the withheld depreciation amounts, plus prejudgment interest accrued on the amounts withheld.  The relevant question here is whether State Farm subtracted an amount from its estimate for labor depreciation and, if so, how much.  Whether State Farm properly estimated other items that made up the total ACV estimate is not relevant to the claims presented here.

State Farm asserts that Johnson, in his deposition, agreed that policyholders who received more in estimated ACV than they actually incurred in repair costs should not be paid any owed depreciation, which contradicts his method of calculating damages.  However, the section to which State Farm refers involves a convoluted hypothetical situation, and the Court finds it difficult, frankly, to discern what point is being made.  *See* Doc. 121-2 at 27-28.

The Court further finds that the information Plaintiff intends to present through Johnson is relevant and useful to the fact finder.  State Farm may raise its issues on cross examination.

### III.  CONCLUSION

For the reasons discussed in this opinion, State Farm's Motion to Exclude Expert Opinions of Toby Johnson and Memorandum of Law in Support (Doc. 122) is **DENIED**.

**DONE** and **ORDERED** this the 30th day of September 2020.

                                                     s/Terry F. Moorer
                                                    TERRY F. MOORER

UNITED STATES DISTRICT JUDGE