# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **ANNIE ARNOLD, individually and**<br>**on behalf of others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIV. ACT. NO. 2:17-cv-00148-TFM-C** |
| ) | |
| **STATE FARM FIRE AND CASUALTY** ) <br> **COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is *Plaintiff Annie Arnold's Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel* (Doc. 87, filed April 22, 2019).  Plaintiff Annie Arnold and Defendant State Farm Fire and Casualty Company appeared for a two-day hearing to address pending motions on July 22-23, 2020.  After a careful review of all the written pleadings, motions, responses, replies, and exhibits, and having heard the arguments and testimony presented by the parties, the Court **GRANTS** the motion for class certification, appointment of class representatives, and appointment of class counsel (Doc. 87) for the reasons articulated below.

## I.   JURISDICTION

Plaintiff Annie Arnold ("Plaintiff" or "Arnold"), proceeding individually and on behalf of all others similarly situated, asserts claims under this Court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332(d), which provides that district courts have original jurisdiction over any civil class action where the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and any member of a class of plaintiffs is a citizen of a State different from any defendant.  *See* 28

U.S.C. § 1332(d)(8) ("This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that action."). The parties do not contest either subject matter, personal jurisdiction, or venue. Adequate support exists for all.

## II. BACKGROUND AND PROCEDURAL HISTORY

Arnold initially filed this putative class action against Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm") in the Circuit Court of Dallas County, Alabama. Doc. 1-1. In her Complaint, Arnold alleges a single claim: breach of contract. Essentially, Arnold alleges that she and other class members had insurance policies through State Farm covering damage to property, and that State Farm breached those contracts by improperly withholding depreciation on labor costs in calculating the actual cash value ("ACV") of each loss, resulting in damages. As relief, Arnold seeks to recoup unpaid depreciated labor costs withheld from class members' claims along with pre-judgment and post-judgment interest on the damages and lawsuit costs and fees. State Farm removed the case to federal court on April 7, 2017. Doc. 1.

As relevant background, State Farm policies providing replacement cost value ("RCV") coverage generally provides for payment of Alabama structural damage claims in two steps:

(1) Until actual repair or replacement is completed, [State Farm] will pay only the actual cash value of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;

(2) When the repair or replacement is actually completed [State Farm] will pay the covered additional amount [the policyholder]s] actually and necessarily spend[s] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less[.]

*See, e.g.*, Doc. 89-10 at 1; Doc. 164-10 at 2.

When a policyholder files a claim, a State Farm adjuster inspects the property damage and estimates the ACV of the claim using State Farm's licensed "Xactimate" software, which enables claim adjusters to enter relevant data—for example, the age and condition of the items needing

repair, the type and amount of materials needed to perform the repairs, etc.—regarding the damage

and the required repairs and electronically calculate ACV based on standardized criteria. For many

Alabama structural damage claims during the relevant time period, the Xactimate software criteria

included withholding costs for labor depreciation from ACV estimates.[1]  As demonstrated during

the evidentiary hearing and set out in the case file, Xactimate software enables labor depreciation

to be calculated or not calculated by merely selecting it as an option with a click of a button. *See,

e.g.,* Docs. 90-6 at 12; 90-13.  Once an estimate is completed, State Farm issues a check to the

policyholder for the ACV amount.

Arnold purchased a State Farm insurance policy—Policy Number 01-48-1214-5, effective

November 27, 2012 to November 27, 2013—on her home in Selma, Alabama.  In June 2013,

during the coverage period, the property was damaged by fire.  Arnold reported the loss to State

Farm on June 5, 2013.  A State Farm claim adjuster inspected Arnold's home and estimated a total

RCV of $95,719.54.  Deducting Arnold's $2,000 deductible and $21,486.26 for labor and other

types of depreciation, the adjuster determined an ACV of $72,233.28.  State Farm paid Arnold that

amount on or about July 3, 2013.

In a July 3, 2013 letter, a State Farm claim representative explained to Arnold that her

policy included replacement cost coverage, meaning that an additional amount of $21,429.41 was

available to her in replacement cost benefits if the cost of replacement or repair exceeds the ACV.

Doc. 89-3.  The letter explained that Arnold could submit a supplemental claim after completion

of repairs or replacement by submitting invoices, receipts, or other documentation. *Id*.  In a

---

[1] Evidence in the record demonstrates that State Farm categorized labor depreciation withholdings in Alabama as "non material depreciation" and "removal depreciation." *See* Docs. 90-6, 90-13. The parties dispute whether an additional category, "O and P depreciation" also qualifies as labor depreciation for purposes of this lawsuit.

subsequent letter dated March 21, 2014, the claim representative indicates additional payment of $15,486.26 in replacement cost benefits based on costs incurred in purchasing and repairing a new home.  Doc. 89-4.

Arnold contends that, after paying off her mortgage, she did not have enough money to repair or rebuild her original home and, instead, bought a home nearby in need of repairs for $43,000 on January 27, 2014.  Arnold and State Farm's claim representative agreed State Farm would release withheld depreciation amounts to enable Arnold to complete repairs if she provided work estimates, which she obtained from various contractors.  Arnold asserts that an estimate from Metro Mason General Contractors showed the amount to complete repairs was $49,704.  Based on the estimates provided, State Farm released withheld depreciation in the amount of $15,486.26 on March 21, 2014, as Arnold's replacement cost benefit.  She asserts that the amount was insufficient to complete the repairs, so she hired subcontractors to perform as much of the work as possible with the funds available.  Arnold filed this lawsuit on March 8, 2017.  After she filed suit, State Farm discovered it had miscalculated and underpaid Arnold for the depreciation amounts.  State Farm sent Arnold a supplemental payment for $4,874.46, representing the remainder of her replacement cost benefit, on April 13, 2017.  Doc. 10-2 at ¶¶ 14-15.

State Farm filed a motion to dismiss this action on April 14, 2017, which the Court denied on August 3, 2017.  Docs. 10, 31.  Arnold filed a motion to remand the action to state court on May 2, 2017, which the Court also denied.[2]  Docs. 19, 31.  Arnold filed her motion for class certification, appointment of class representatives, and appointment of class counsel on April 22, 2019.  State Farm responded, and Arnold replied.  Docs. 108, 113.  State Farm filed a motion for summary judgment on November 1, 2019, to which Arnold responded and State Farm replied.

---

[2] On August 30, 2018, the case was reassigned to the undersigned.

Docs. 119, 128, 133.  State Farm also filed a motion to exclude the expert opinions of Toby Johnson on November 19, 2019, which this Court denied on September 20, 2020.  Doc. 122, 177. An evidentiary hearing was held on the pending motions on July 22-23, 2020.[3]  Thus, the pending motions are ripe for review.

### III.   DISCUSSION AND ANALYSIS

In this motion, Arnold seeks (1) certification of the class, (2) appointment of Arnold as class representative along with Bobby Abney ("Abney"), Tina Daniel ("Daniel"), and Kenneth Scruggs ("Scruggs") as additional class representatives; and (3) appointment of Arnold's counsel as class counsel.  Docs. 87-88.  Each will be addressed in turn.

### A.   Motion for Class Certification

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, class certification requires a two-part analysis.  First, the proposed class must satisfy the prerequisites outlined in Rule 23(a). Second,  the proposed class must satisfy at least one of the types of class actions in Rule 23(b). Arnold seeks class certification pursuant to Rule 23(b)(3) which applies when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

### 1.   Fed. R. Civ. P. 23(a) Prerequisites

A "plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable."  *Carriuolo v. Gen. Motors Co.,* 823 F.3d 977, 984 (11th Cir. 2016) (internal quotations omitted).  If the district court determines that this requirement

---

[3] The evidentiary hearing was originally scheduled for March 23-24, 2020; but was rescheduled in light of the COVID-19 pandemic.

has been met, it then must determine whether a motion for certification of a class meets the requirements of Fed. R. Civ. P. 23. *Id.* Specifically, one or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

These requirements are known as numerosity, commonality, typicality, and adequacy, and they ensure that class claims are "effectively limit[ed] … to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011).

### i.    Ascertainability

"An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cty. Greyhound Park, Inc.,* 562 F. App'x 782, 787 (11th Cir. 2014). Analyzing the objective criteria also should be administratively feasible, meaning "that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Id.* (omitted internal quotations).

As Arnold argues, the class definition sets out clear, objective criteria for determining class membership.  Arnold defines class members by: "(1) geography; (2) temporal date; (3) fact of an ACV payment on structural damage property claim (e.g., a building, home, garage); (4) application of a computer program's depreciation option settings to lower that payment; (5) by policy type (excluding FE-3650 form policies and other policies that expressly provide for the 'depreciation' of 'labor'); and (6) circumstance (applicable limits of policy reached by ACV payment)."  Doc.

88 at 19.  The class encompasses State Farm policyholders with structural damage claims for property located in Alabama.  It further defines that group by date—i.e., policyholders who made claims for losses that occurred on or after March 8, 2011, and before August 3, 2017, the date on which State Farm amended its statewide practices and ceased deducting labor depreciation from its payments.  Within that group, the class includes policyholders whose claims resulted in an ACV payment from which "non-material depreciation" was withheld, or which would have resulted in an ACV payment but for the withholding of "non-material depreciation" in cases where the depreciation caused the payment amount to drop below the applicable deductible.  The class definition also excludes the following: (1) claims arising under policies that expressly permit the depreciation of labor; (2) claims in which the ACV payment already exhausted the applicable insurance cap; and (3) members of the judiciary and their staff to whom this action is assigned; State Farm and its affiliates, officers, and directors; and Plaintiff's counsel.

State Farm takes issue specifically with the feasibility of ascertaining claims to which labor depreciation was applied, arguing that there is no single data field in its report data that identifies ACV payments in which labor depreciation was applied, and some policyholders receive up-front payments of actual replacement costs without first receiving an ACV payment.  State Farm estimates there could be as many as 1,000 such claims, based on the "several" that were identified among the sample claims State Farm provided during discovery.  *See* Doc. 108 at 25-26.

Nevertheless, it is clear from the case file and the arguments and testimony during the evidentiary hearing that this data *is* ascertainable.  It is objective criteria that can be determined from the electronic claims files.  There need not be a single existing data field readily listing the full class of policyholders set out in this lawsuit.  State Farm does not argue that the amount of labor depreciation withheld from ACV estimates made by State Farm adjusters is readily available.

The large majority of policyholders receive an up-front ACV payment based on this estimated amount.  Some number of State Farm policyholders keep that amount.  Others take advantage of the second option—submitting paperwork to demonstrate that actual repairs or replacement costs exceeded the estimated amount and receiving a second payment for the difference.  A smaller number of policyholders—State Farm estimates up to 1,000 in the class, based on "several" identified in the sample data provided during discovery—never receive an ACV estimate and receive the actual cost up front because they have the paperwork in hand before any estimating occurs.  State Farm makes much of these differences and its ability to easily sort them out in order to determine the proper amount of labor depreciation withheld.  But they are nonspecific about what exactly would be involved or how long it might take, except to say it would be "tedious." *Id*. at 26.  However, the data being sought is not overly complex.  The procedures for processing claims are formulaic and standardized.  It is clear that identifying class members with State Farm's claims data is administratively feasible, and any need to examine some—or even all—of the individual claims files in order to make the necessary determinations does not render it otherwise.  Thus, the Court finds the class is ascertainable.

### ii.     Numerosity

Although there is no specific number of class members required to demonstrate that joinder is impracticable, numerosity is "generally presumed when a proposed class exceeds 40 members." *LaBauve v. Olin Corp.,* 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986); *Silva-Arriaga v. Texas Exp., Inc.,* 222 F.R.D. 684, 688 (M.D. Fla. 2004)).  "Other considerations for Rule 23(a)(1) purposes include geographic diversity of class members, judicial economy, and the ease of identifying and locating class members." *Id*.

As Arnold argues, State Farm concedes that the number of Alabama claims implicated by this lawsuit runs in the thousands. In its Notice of Removal, State Farm asserts, for purposes of establishing this Court's diversity jurisdiction, that it analyzed data from its electronic Xactimate estimating software and its own electronic claims handling system from 2012 and 2013 and found more than 5,000 structural damage claims in Alabama in which an Xactimate was prepared, labor depreciation was withheld, and the claim payment appeared to be less than the coverage limit. The labor depreciation withheld in the Xactimate estimates totaled more than $6,000,000.

Moreover, State Farm's supplemental payment program located 612 Alabama claims in which labor depreciation was withheld just between August 2, 2017 and August 25, 2017 and issued refunds to those policyholders. *See* Docs. 90-6, 90-9, and 90-14. Indeed, State Farm raises no argument against numerosity. The Court finds numerosity is satisfied.

### iii. Commonality

In regard to commonality, to satisfy Fed. R. Civ. P. 23(a)(2) the claims of every class member must "depend upon a common contention." *Dukes*, 564 U.S. at 350, 131 S. Ct. at 2551. This common contention "must be of such a nature that it is capable of class-wide resolution— which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Furthermore, "a class action must involve issues that are susceptible to class-wide proof." *Bussey*, 562 F. App'x at 788 (citing *Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001)). "Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Id*. (internal quotations omitted)

As Arnold asserts, the overarching issue in this case is whether State Farm breached its agreements with policyholders by improperly withholding labor depreciation from its payments to

policyholders for covered property damage.  *See* Doc. 88 at 21.  All of the policies implicated in the lawsuit cover property located in Alabama, and thus Alabama law applies uniformly.  As Plaintiff asserts, that common question will yield a common answer applicable to the entire class. State Farm does not raise an argument as to commonality.  The Court finds commonality is easily satisfied.

### iv.    Typicality

The next element of Fed. R. Civ. P. 23(a) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3). "[T]ypicality refers to the individual characteristics of the named plaintiff in relation to the class." *Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004).  Typicality requires "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  This nexus is established when "the claims or defenses of the class and the class representatives arise from the same...pattern or practice and are based on the same legal theory."  *Id.*  "All putative class members are not required to have identical claims, and factual differences among the claims of the putative class members do not defeat certification."  *Cooper*, 390 F.3d at 714.

The claims presented by Arnold and the additional proposed class representatives arise from State Farm's practice of depreciating labor costs when calculating ACV.  They contend that the underpayment of ACV claims violate the terms of their standard-form insurance policies with State Farm and are identical to the claims of the class.  Similar to commonality, State Farm does not raise an argument as to typicality.  The Court finds the proposed class representatives' claims are typical of the claims of the class.  Thus, typicality is satisfied.

###### v.   Adequacy

The last element of Fed. R. Civ. P. 23(a) requires that the representative parties will fairly and adequately protect the interests of the class.   Fed. R. Civ. P. 23(a)(4).   "[T]he adequacy requirement of Rule 23(a)(4) most often has been described to 'involve[] questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether plaintiffs have interests antagonistic to those of the rest of the class.'"   *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987).   This requirement encompasses two inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will prosecute the action."   *Strawser v. Strange*, 307 F.R.D. 604, 613 (S.D. Ala. 2015) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).   When a court determines that class representatives and the putative class share commonality and typicality, fair and adequate protection of the class interests usually follows.   *See Dukes*, 564 U.S. at 349, n.5, 131 S. Ct. at 2551, n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge.   Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.").   "Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants…For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of absent class members' claims."   *CE Design, Ltd. v. King Architectural Metals Inc.*, 657 F.3d 721, 728 (7th Cir. 2011).

State Farm argues that Arnold is not an adequate class representative because she is the debtor in a Chapter 13 bankruptcy action, allegedly lacks integrity, and her status as an "interest only" claimant.  In response, Arnold explains that none of State Farm's arguments preclude a finding that adequacy is satisfied.

First, Arnold's claim in this litigation is exempt from her bankruptcy.[4]  Arnold listed this claim in her exemption form and there was no objection made by the creditor, therefore Arnold owns the claim.  *In re Annie P. Arnold*, No. 2:18-bk-01919 (Bankr. S.D. Ala. Oct. 1, 2018); *See also, Am. Gen. Fin., Inc. v. Tippins*, 221 B.R. 11, 17-18 (Bankr. N.D. Ala. 1998) ("[N]o party in interest objected to the exemptions and therefore Tippins obtained a property right in the lawsuit and its proceeds. That property interest necessarily creates standing in the debtor."); *See generally,* Ala. Code §§ 6-10-6, 6-10-12.

Second, State Farm alleged that Arnold made misrepresentations regarding repair costs which could void her Home Owner's policy and defeat her claims for further payment of ACV.[5] State Farm's HO policy states that a policy is void if the policyholder "has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance, whether before or after a loss." *See* Doc. 1-2 at 36 ¶ 2.  Specifically, State Farm alleges that "Arnold secured nearly $50,000 in replacement cost benefits based on repair cost submissions she told State Farm she would incur, but then never did." Doc. 108 at 47.  Arnold argues that she only received $15,486.26

---

[4] Arnold notes that even if her claims were not exempt from her bankruptcy, State Farm's argument that she is inadequate to represent the class still fails. *See Looney v. Hyundai Motor Mfg. Ala.,LLC*, 330 F. Supp. 2d 1289 (M.D. Ala. 2004) (holding that Chapter 13 debtor had standing to litigate non-bankruptcy cause of action which was property of bankruptcy estate).

[5] If this case proceeds to trial, State Farm has reserved the right to argue that Arnold's alleged misrepresentation bars her breach of contract claim as a matter of law. *See* Doc. 119 at n. 6.  As noted in the companion summary judgment opinion issued this same date, whether Arnold misrepresented her claims would be a credibility issue for the jury.  Their finding may dictate whether the Court may rule as a matter of law.

in replacement cost benefits at the time this lawsuit was filed.  After the suit was brought, State Farm and its attorneys conducted an investigation of Arnold's replacement cost claim and concluded she was underpaid in replacement cost benefits.  State Farm sent Arnold an additional check because she was underpaid for RCV benefits for reasons unrelated to labor depreciation.  At the class certification hearing, State Farm conceded and explained that it acknowledged its error in its notice of correction.[6]  Thus, this portion of State Farm's argument was based on a mistake of fact.

State Farm's final argument against Arnold satisfying the adequacy requirement is that Arnold is inadequate because of her status as an "interest only" claimant.  *See* Doc. 108 at 47. State Farm reasons that because Arnold only seeks prejudgment interest and not principal this differentiates her from the majority of class members who have not yet recovered full replacement cost benefits.  *Id.*  In response, Arnold explains that "the size of a plaintiff's individual claim as compared to those of other class members is immaterial to the adequacy inquiry under Rule 23. Thus, a plaintiff is not required to have a large financial interest in the litigation in order to serve as an adequate representative."  *See* Wm. Rubenstein, Newberg on Class Actions, § 3:60 (5th ed., Summer 2020).  Contrary to State Farm's argument, Arnold's status as an interest claimant is common throughout the class.  All class members seek prejudgment interest, whereas only a portion of class members also seek unpaid principal.  Thus, the Court agrees with Arnold—none of State Farm's arguments establish a conflict of interest between the class members or raise any issues that would merit finding Arnold's claim inadequate.

---

[6] *See* Doc. 117 at 2. ("[T]he signed repair contract Plaintiff submitted was for $49,750 in repairs (*i.e.*, 'nearly $50,000'), Plaintiff in fact submitted the contract 'to recover remaining available replacement cost benefits (which were approximately $20,000) from State Farm, but then never actually hired the contractor to perform the repairs as she said she would and did not pay them any of the money she received.")

In regard to the appointment of class representatives, it is clear that Arnold, Abney, Daniel, and Scruggs share interests with the class and have no substantial conflict of interest. Their claims arise from the same practice—State Farm's depreciation of labor costs when calculating ACV—and the same standard-form insurance policies as the class members' claims. In regard to the appointment of class counsel, Arnold's counsel have extensive experience in the litigation of class actions. *See* Docs. 89-33 - 36, Exs. GG – JJ. The Court finds that Arnold, Abney, Daniel, and Scruggs and Arnold's counsel are capable of fairly and adequately representing the interests of the class. Thus, adequacy is satisfied.

**B.      Fed. R. Civ. P. 23(b)(3) Types of Class Actions**

In order to attain class certification, Fed. R. Civ. P. 23(b) requires satisfaction of Rule 23(a) Prerequisites and Rule 23(b) Types of Class Actions. The type of class action relevant to this case is Rule 23(b)(3), which allows for class certification if "the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3)(emphasis added).

**1.  Predominance**

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623, S. Ct. 2231, 2249, 138 L. Ed. 2d 689 (1997). Application of this test requires courts to give careful scrutiny to the relation between common and individual questions in a case. *Tyson Foods, Inc. v. Bouaphakeo*, ---U.S.---, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each

member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id*. (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-197 (5th ed. 2012)). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief.  On the other hand, common issues will not predominate over individual questions if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues. *Carriuolo*, 823 F.3d at 985.  The burden of establishing the requirements of Rule 23 is on the plaintiff who seeks to certify the class. *Id*. at 981 (citing *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir. 1997)).  "The Supreme Court has repeatedly emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id*. (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013)).

Arnold argues that predominance is satisfied because the pertinent issue to every putative class member is whether State Farm breached the standard-form insurance policy by withholding labor depreciation when calculating ACV payments.  Furthermore, Arnold asserts that resolution of the central policy interpretation issues will materially advance the litigation for all class members.  Doc. 88 at 24-5.

State Farm argues that "[p]redominance and superiority fail because liability and damages cannot be established through common proofs, but rather require individualized proof and analysis of claim-related documentation for thousands of potential class members."  Doc. 108 at 10. According to State Farm, the actual issue—whether State Farm underpaid each policyholder for ACV—cannot be resolved by using the same evidence for each putative class member.  *Id*.

Further, State Farm contends that if the application of labor depreciation is improper, it does not inherently result in a claim underpayment and breach of contract. *Id*. at 29. State Farm explains that Xactimate produces estimates that are not 100% accurate. Consequently, many of the insureds who received an ACV payment with labor depreciation applied were not underpaid because the estimate that served as the basis for their ACV payment was overstated by more than the amount of any applied labor depreciation. *Id*. at 30. The Court disagrees with State Farm's framing of the issue and finds its reasoning unpersuasive for the following reasons.

First, the claim pertinent to this class action is the initial amount State Farm owed its insureds, pursuant to its policies, prior to deducting labor depreciation from the ACV. Contrary to State Farm's argument, this Court agrees with its sister court that "the issue is not whether the actual cash value payments paid by State Farm were reasonable or sufficient," the issue is "whether State Farm was entitled to deduct labor depreciation in the first place." *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 563 (N.D. Miss. 2018).

Second, "courts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations." W. Rubenstein, Newberg on Class Actions, § 4:54 (5th ed., Summer 2020). Courts have uniformly rejected State Farm's argument that issues relating to individualized damages suffered by each class member will overshadow the common question of withholding labor depreciation. Furthermore, in jurisdictions where labor depreciation is unlawful, as is the case here, courts have uniformly found that common questions predominate in cases challenging insurers' depreciation of labor costs. *See generally, Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (affirming the district court's grant of class certification); *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 710-11 (5th Cir. 2020) (affirming the district court's grant of class

certification); *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371 (8th Cir. 2018)*, reh'g and reh'g en banc denied* (8th Cir. Jan. 29, 2019) (holding district court did not abuse its discretion in concluding that State Farm's violation of its contractual obligations by withholding labor depreciation when calculating ACV was a common question well suited for classwide resolution).

State Farm refutes this by citing, *In re State Farm Fire and Cas. Co.*, 872 F.3d 567 (8th Cir. 2017) ("*LaBrier*"). In *LaBrier*, the court held that class certification was precluded because common facts at issue did not predominate. Specifically, the court reasoned that plaintiff's issue of whether State Farm's chosen methodology produced a reasonable estimate of the difference in a property's value before and after a loss was a question for the jury to determine on a case-by-case basis. *See LaBrier*, 872 F.3d at 576. A year following *LaBrier,* the same court ruled in *Stuart*, 910 F.3d 371. *Stuart* and *Arnold* assert the same issue and are both distinguishable from *LaBrier.* The plaintiffs in *Stuart*, similar to the instant case, argued that their claims shared a common legal question—whether State Farm breached their contracts by depreciating labor from their ACV payments. *Id.* at 375. As noted by the Eighth Circuit, *Stuart* is distinguishable from *LaBrier*:

> Unlike in *LaBrier*, plaintiffs' contracts specified the method for calculating ACV payments: "the amount it would cost to repair or replace damaged property, less depreciation." Thus, State Farm's obligation here was not merely to arrive at a "reasonable" estimate of the property's value before and after the loss, but to calculate the ACV payment in accordance with the prescribed formula. There is no need for a jury to evaluate conflicting estimates based on different methodologies; the parties agreed on a methodology and the only dispute is over including labor depreciation in the calculation, which is a discrete portion of the formula that is easily segregated and quantified.

*Id.* at 376.

Furthermore, this Court finds that this lawsuit is also distinguishable from *LaBrier*. In Arnold's policy, ACV is an undefined term. In earlier proceedings this Court considered whether under Alabama law, the undefined term ACV unambiguously includes depreciation of labor costs,

and found that it does not. *See Arnold v. State Farm Fire and Casualty Co.*, 268 F. Supp. 3d 1297, 1309 (S.D. Ala. 2017). Thus, Arnold is alleging that State Farm breached its contractual duty to pay ACV by unlawfully depreciating labor costs. *See* Doc. 164-4, Arnold Estimate, Ex. SF-4 at 3-4. In other words, the formula implemented through State Farm's Xactimate program contains an unlawful element, namely the depreciation of labor, that can be easily segregated and quantified to render an accurate lawful ACV calculation.

As Arnold argues, class certification is not precluded because damages may need to be calculated on an individual basis. "[A]t the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S. Ct. 1426, 1433, 185 L. Ed. 2d 515 (2013). Here, it is clear that the allegations if true establish that State Farm breached its standard-form insurance policies by improperly withholding labor costs from ACV payments. Therefore, Arnold argues that State Farm should refund the depreciated labor costs and pay prejudgment interest. Although the damages for every class member are unique and data driven, they can be measured by a common arithmetic formula: the amount of labor depreciation withheld from an outstanding ACV payment—"amounts calculated through Xactimate (using default settings)"—plus pre-judgment interest. Doc. 88 at 29. At the evidentiary hearing, Arnold emphasized that this *identical formula* has been *repeatedly approved* by courts as an appropriate and feasible means of calculating class member damages. *See Hicks*, 965 F.3d at 460; *Mitchell*, 954 F.3d at 711-12.

Additionally, in response to State Farm's notion that 15 minutes per claim is too long to determine damages, Arnold cites *Mitchell's* rejection of this argument:

> Plaintiff's expert, Toby Jerrell Johnson, reported that "determining the amount of still withheld non-material depreciation on a property damage claim through Xactimate is *simple*" and the amount of withheld non-material depreciation could be determined on a property claim within 2-3 minutes—less complex cases may

take 1 minute and more complex cases may take 3-4 minutes. Johnson further reports that the process would require the "simple function of toggling the checkbox" in each members' claim and comparing the difference in the amounts of withheld depreciation. However, even if it were to take the 15-20 minutes per claim, or the expected 3000 hours, as calculated by State Farm's expert O'Connor, this court finds that neither method preclude class certification.

Doc. 113 at 28 (quoting *Mitchell*, 327 F.R.D. at 563).

The Court is unpersuaded by State Farm's arguments and finds that the predominance requirement is satisfied because there is a common question to each class member—whether State Farm breached its standard-form insurance policy by withholding labor depreciation when calculating its insureds' ACV payments.

### 2. Superiority

Pursuant to Fed. R. Civ. P. 23(b)(3), matters pertinent to determining whether a class action is the superior method to adjudicate a controversy include (but are not limited to): (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *See* FED. R. CIV. P. 23(b)(3)(A)-(D). In general, courts determine superiority by considering "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010). Here, all of the factors favor class certification.

Factors B and C are a portion of Arnold's argument that are addressed briefly. As to factor B—prior litigation involving class members—there are no other suits concerning this subject matter, therefore this class will be a single state class. As to factor C—desirability of concentrating claims—three circuit courts have uniformly concluded that a class action is a superior means to

adjudicate labor depreciation claims fairly and efficiently, including in cases specifically involving State Farm uniform practices and standard-form policies. *See Hicks*, 965 F.3d at 464; *Mitchell*, 954 F.3d at 712-13; *Stuart*, 910 F.3d at 377.  This court agrees.  Therefore, the crux of Arnold's argument lies in factors A and D, which the Court addresses in turn.

In regard to factor A—whether anyone has an interest in individually filing suit—the existence of negative value claims is the most compelling reason for finding superiority in a class action.  *See Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017).  A negative value claim is one in which the costs of prosecuting an individual case exceeds the expected recovery.  *Smith v. Triad of Ala., LLC*, Civ. Act. No. 1:14-324, 2017 WL 3816722, at *2, 2017 U.S. Dist. LEXIS 140594, at *5 (M.D. Ala. Aug. 31, 2017).  "[I]n undertaking the superiority analysis in a small claims case, a court can typically fulfill its entire function simply by stating that the case involves small claims. That implies that there is no alternative form of litigation, and when no viable alternative to a class action is available, the class action is necessarily the superior method of adjudication."  NEWBERG § 4:87 (internal quotations omitted).  Here, Arnold's claim is a negative value claim because the average value of non-material withholding is approximately $594.67.  *See* Doc. 90-11, Ex. AA at ¶ 55.  Consequently, "[i]t would be incredibly difficult for class members to pursue a claim against Defendant outside of this class action." *Mitchell*, 327 F.R.D. at 564 (finding superiority of labor depreciation class action where majority of putative class members' claims value at or below $20,000, including named plaintiff's $738 claim).  The circuit courts have uniformly found that class actions are the superior method to resolve State Farm labor depreciation claims because "Plaintiffs' ability to obtain relief through individual damages suits is likely not economically feasible."[7]  Thus, factor A clearly favors class certification.

---

[7] *See Hicks*, 965 F.3d at 464 ("the payments State Farm made to Kentucky homeowners for

Factor D of Rule 23(b)(3) addresses the manageability of the class action. State Farm argues that Arnold has not demonstrated superiority because the case is not manageable considering "State Farm's alleged liability and damages (if any) owed to putative class members will require tens of thousands of minitrials." *See* Doc. 108 at 43. The Court is unpersuaded by this argument because "there is a strong presumption against denying class certification for management reasons." *See Smith,* 2017 WL 3816722, at *2, 2017 U.S. Dist. LEXIS 140594, at *5 (quoting *Buford v. H&R Block, Inc.*, 168 F.R.D. 340, 363 (S.D. Ga. 1996)). The Court agrees with Arnold's argument that this case "is peculiarly manageable" because resolution of this litigation only involves the analysis of the laws of a single state, standard-form contract language, and the uniform conduct of a single insurer. *See Roper v. Consurve, Inc.*, 578 F.2d 1106, 1115 (5th Cir. 1978) (finding class action was superior means of adjudicating class of plaintiffs who all "live[d] in one state" and whose addresses were kept on file by defendant); *Smith,* 2017 WL 1044692, at *15, 2017 U.S. Dist. LEXIS 38574, at *44 (finding superiority "because each class member lives in Alabama and has an address on file with [defendant], the difficulties in managing the case should be minimal"). As evidence of the class action's feasibility, Arnold references State Farm's refund program in which they managed to get compensation to their policyholders. *See Hicks*, 965 F.3d at 462 ("It is thus reasonable to infer that State Farm did not have any problem with refunds causing ACV payments to exceed estimated replacement costs for the nearly 2,000 claimants it refunded through its program—a program that serves as a model for how State Farm would pay damages to

---

depreciation costs through its 2015 refund program were generally less than $1,000.00 and a 'significant portion' of the refunds were for amounts 'less than the filing fee for initiating an action in state court.'"); *Mitchell*, 954 F.3d at 712 ("Here, the district court found that there are over 10,000 relevant claims in the proposed class that are likely to be too small to engage in separate litigation."); *Stuart*, 910 F.3d at 377 (finding superiority because "the class members' claims are generally small and unlikely to be pursued individually.").

class members here.").  This Court, similar to the courts in *Hicks*, *Mitchell*, and *Stuart*, finds that this class action is manageable.

Thus, having satisfied the pre-requisites set forth in Rule 23(a) and the requirements outlined in Rule 23(b)(3), class certification pursuant to Rule 23(b)(3) is appropriate. Therefore, the motion for class certification (Doc. 87) is granted.

## C.    Notice to Potential Class Members

Pursuant to Rule 23(c)(2)(B) "[f]or any class certified under Rule 23(b)…the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  *See* FED. R. CIV. P. 23(c)(2)(B).  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  *Id.*  The parties are directed to submit a proposed class notice draft by **January 25, 2021** for the court to approve.

### IV.    CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

(1) Plaintiff's Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel (Doc. 87) is **GRANTED**.

(2) Arnold, Abney, Daniel, and Scruggs are appointed representatives of the class.

(3) Mehr, Fairbanks & Peterson Trial Lawyers, PLLC, Gilbert McWherter Scott Bobbit PLC, Larson King, LLP, and The Martin Law Group, LLC are appointed class counsel.

(4) Plaintiff and Defendant are directed to submit a proposed class notice draft for the Court

to approve by **January 25, 2021.**

**DONE** and **ORDERED** this the 23rd day of November 2020.

 s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE